**2024-2243**

# United States Court of Appeals for the Federal Circuit

EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant*

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION, STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, CLEVELAND-CLIFFS INC., NUCOR CORPORATION,

*Defendants-Appellees*

Appeal from the United States Court of International Trade, Case No. 1:22-cv-00349-TMR, Hon. Judge Timothy M. Reif

### PLAINTIFF-APPELLANT'S OPENING BRIEF

CHRISTINE M. STREATFEILD
JUSTIN R. BECKER
BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiff-Appellant*

November 20, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2024-2243

**Short Case Caption** Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC

**Filing Party/Entity** Ereğli Demir ve Çelik Fabrikaları T.A.Ş.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/20/2024

Signature: /s/ Christine M. Streatfeild

Name: Christine M. Streatfeild

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("Erdemir") | | See Attachment A. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Christine M. Streatfeild, Principal, Baker & McKenzie LLP | | |
| Justin R. Becker, Partner, Baker & McKenzie LLP | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**(Parent Corporations and Stockholders Continued)**

Plaintiff is a publicly traded company, listed on the stock exchange of Istanbul, Turkey.  Erdemir is 49.29 percent owned by Ataer Holding A.Ş., which is 100 percent owned by Ordu Yardimlaşma Kurumu ("OYAK"), which is a Turkish pension fund owned by its members, who are current and retired members of the Turkish armed forces; 47.63 percent of Erdemir's shares are traded on the Istanbul Stock Exchange; and 3.08 percent of its shares are held by the company as treasury stock.

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................ ii

STATEMENT OF RELATED CASES .................................................................1

STATEMENT OF JURISDICTION....................................................................1

STATEMENT OF ISSUES ...............................................................................2

STATEMENT OF CASE AND FACTS ...............................................................2

    I.      ADMINISTRATIVE PROCEDURAL HISTORY ..............................3

        A.    The Original Antidumping and Countervailing Duty
            Investigations ................................................................3

        B.    Çolakoğlu Successfully Appealed Commerce's Antidumping
            Determination................................................................5

        C.    Erdemir Moved the Commission To Give Effect to the Revised
            Commerce Determination .................................................6

    II.     JUDICIAL PROCEDURAL HISTORY .............................................8

SUMMARY OF THE ARGUMENT ....................................................................9

ARGUMENT ...............................................................................................10

    I.      STANDARD OF REVIEW ...............................................................10

    II.     ERDEMIR'S CLAIMS PROPERLY FALL UNDER 28 U.S.C. §
         1581(i) .....................................................................................10

        A.    The True Nature of Erdemir's Action is the Commission's
            Failure to Initiate Reconsideration Proceedings .......................10

        B.    Erdemir Did Not Have a Cognizable Claim Under 28 U.S.C. §
            1581(c) Within the Time Allowed For Such Appeals ..............14

        C.    Even If Erdemir Had a Cognizable Claim Under 28 U.S.C. §
            1581(c), The Remedy Provided Would Be Manifestly
            Inadequate ...................................................................18

CONCLUSION AND RELIEF SOUGHT ...........................................................21

# TABLE OF AUTHORITIES

*Page(s)*

## Administrative Decisions

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297, USITC Pub. 4570 (Oct. 2015) ...............................................................3

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016)....................................4

*Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67962 (Dep't of Commerce Oct. 3, 2016) ........................5, 6, 7, 13

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53428 (Dep't of Commerce Aug. 12, 2016)...............................3, 4

*Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53433 (Dep't of Commerce Aug. 12, 2016)...................................3

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Final), USITC Pub. 4638 (Sept. 2016)......................................................................4, 5

*Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part,*
85 Fed. Reg. 29399 (Dep't of Commerce May 15, 2020) .................................... 6

*Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Inv. No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey,*
87 Fed. Reg. 73331 (Nov. 29, 2022) .................................................................... 8

**Cases**

*Alberta Gas Chems., Ltd. v. Celanese Corp.,*
650 F.2d 9 (2d Cir. 1981) ..................................................................................... 12

*Bookman v. United States,*
453 F.2d 1263 (Ct. Cl. 1972) ............................................................................... 12

*Boomerang Tube LLC v. United States,*
125 F. Supp. 3d 1357 (Ct. Int'l Trade 2015) ........................................................ 18

*Borlem S.A. Empreedimentos Industrias v. United States,*
913 F.2d 933 (Fed. Cir. 1990) ............................................................................. 21

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC,*
Case No. 22-cv-00349 (Ct. Int'l Trade 2024) ............................................. *passim*

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC,*
Case No. 22-cv-00350 (Ct. Int'l Trade 2024) ........................................................ 8

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC,*
Case No. 22-cv-00351 (Ct. Int'l Trade 2024) ........................................................ 8

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States,*
308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018) ..................................................... 5, 6

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States,*
357 F. Supp. 3d 1325 (Ct. Int'l Trade 2018) ......................................................... 6

iii

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
    415 F. Supp. 3d 1216 (Ct. Int'l Trade 2019) ......................................................6

*Ereğli Demir ve Çelik Fabrikalari T.A.S. v. United States*,
    435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020) ...................................................6, 7

*Ereğli Demir ve Celik Fabrikalari T.A.S. v. United States*,
    Case No. 20-2003 (Fed. Cir. June 4, 2021) ........................................................7

*Clarke v. United States*,
    915 F.2d 699 (D.C. Cir. 1990) ..........................................................................15

*Diamond Sawblades Mfrs' Coalition v. United States*,
    Slip Op. 15-92, 2015 WL 4978726 (Ct. Int'l Trade Aug. 20, 2015) .................18

*Encon Indus., Inc. v. United States*,
    18 CIT 867 (1994) .............................................................................................18

*Ford Motor Co. v. United States*,
    688 F.3d 1319 (Fed. Cir. 2012) ........................................................................10

*Greene County Planning Board v. Federal Power Commission*,
    559 F.2d 1227 (2d Cir. 1976), *cert. denied*, 434 U.S. 1086 (1978) ..................12

*Hartford Fire Ins. Co. v. United States*,
    544 F.3d 1289 (Fed. Cir. 2008) ...................................................................11, 18

*Home Prods. Int'l, Inc. v. United States*,
    633 F.3d 1369 (Fed. Cir. 2011) ........................................................................12

*Hutchison Quality Furniture, Inc. v. United States*,
    827 F.3d 1355 (Fed. Cir. 2016) ........................................................................11

*Interspiro USA v. Figgie Int'l, Inc.*,
    18 F.3d 927 (Fed. Cir. 1994) ............................................................................10

*Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*,
    482 U.S. 270 (1987).........................................................................................12

*Jem D Int'l (Mich.) Inc. USA v. United States*,
    470 F. Supp. 3d 1374 (Ct. Int'l Trade 2020) ....................................................15

*Knox v. Service Employees*,
    567 U.S. 298 (2012) ........................................................................................14

*LG Elecs., Inc. v. ITC*,
    37 CIT 1589 (2013) ...................................................................................19, 20

*LG Elecs., Inc. v. ITC*,
    38 CIT 103 (2014) .....................................................................................19, 20

*National Corn Growers Ass'n v. Baker*,
    840 F.2d 1547 (Fed. Cir. 1988) .............................................................11

*Norsk Hydro Can., Inc. v. United States*,
    472 F.3d 1347 (Fed. Cir. 2006) .............................................................11

*Nucor Corp. v. United States*,
    296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018) .........................................5

*Sunpreme Inc. v. United States*,
    892 F.3d 1186 (Fed. Cir. 2018) .............................................................18

*Suntec Indus. Co. v. United States*,
    857 F.3d 1363 (Fed. Cir. 2017) .............................................................11

*Tokyo Kikai Seisakusho Ltd. v. United States*,
    529 F.3d 1352 (Fed. Cir. 2008) .............................................................1

*United States Steel Corp. v. United States*,
    Consol. Ct. No. 14-00232 (Ct. Int'l Trade 2016) ................................18

*Usinor Industeel, S.A. v. United States*,
    26 CIT 1402 (2002) ...............................................................................21

*Williams v. Sec'y of Navy*,
    787 F.2d 552 (Fed. Cir. 1986) ...............................................................11

*Xerox Corp. v. United States*,
    289 F.3d 792 (Fed. Cir. 2002) ...............................................................10

**Statutes**

19 U.S.C. § 1516a ...........................................................................................9, 12

19 U.S.C. § 1516a(a)(1)(B) ..............................................................................13

19 U.S.C. § 1516a(a)(2)(B)(iii)................................................................13

19 U.S.C. § 1677(24) ...........................................................................3

28 U.S.C. § 1295(a)(5) .........................................................................1

28 U.S.C. § 1295(a)(6) .........................................................................1

28 U.S.C. § 1581(i) ......................................................................*passim*

28 U.S.C. § 1581(c) ......................................................................*passim*

28 U.S.C. § 1581(c)(i)(1)(B) ...............................................................1

28 U.S.C. § 1581(c)(i)(1)(D) ..............................................................1

28 U.S.C. § 2643(c)(1) .......................................................................21

**Other Authorities**

Fed. Cir. R. 47.5 ................................................................................1

*Letter from Erdemir to Commission re Changed Circumstances Review* (Sept. 10, 2021) .........................................................................7

*Letter from Erdemir to Commission re Request for Reconsideration* (May 18, 2020)...........................................................................7

## STATEMENT OF RELATED CASES

The following cases are currently pending before this Court and will directly affect or be directly affected by this Court's decision: *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2242 (Fed. Cir. 2024) and *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2249 (Fed. Cir. 2024). *See* Fed. Cir. R. 47.5. The Court has ordered that the three appeals be assigned to the same merits panel as companion cases. *See* ECF No. 18.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1295(a)(5), (6). Plaintiff-Appellant Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("Erdemir") appeals from a judgment of the U.S. Court of International Trade ("CIT"), which dismissed Erdemir's appeal of a determination issued by the U.S. International Trade Commission (the "Commission") under 28 U.S.C. §§ 1581(c), (i)(1)(B), (i)(1)(D). *See* Appx0001. Specifically, the Commission denied Erdemir's request to initiate a reconsideration proceeding notwithstanding a corelated judicial proceeding that fundamentally undermined the Commission's original determination. *See* Appx0036; *see also Tokyo Kikai Seisakusho Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008) (citation omitted) ("The power to reconsider is inherent in the power to decide."). Erdemir timely noticed its appeal on August 14, 2024. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No.

## STATEMENT OF ISSUES

Whether the CIT had subject matter jurisdiction under 28 U.S.C. § 1581(i) to review Plaintiff's appeal of the Commission's decision not to conduct a reconsideration proceeding of the final injury determination in an antidumping duty ("AD") investigation when corelated litigation fundamentally altered the universe of imports at issue in the underlying injury determination.

## STATEMENT OF CASE AND FACTS

This appeal challenges the CIT's determination that it did not have subject matter jurisdiction under 28 U.S.C. § 1581(i) to review Erdemir's appeal of the Commission's decision not to conduct a reconsideration proceeding of the final injury determination in the AD investigation of *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*. Erdemir, a producer and exporter of hot-rolled steel from Turkey, requested that the Commission reconsider its final injury determination to account for a significant intervening decision in corelated litigation. Provided below is a summary of the administrative and judicial procedural history that resulted in the current appeal.

# I. ADMINISTRATIVE PROCEDURAL HISTORY

## A. The Original Antidumping and Countervailing Duty Investigations

In the original AD and countervailing duty ("CVD") investigations underlying this appeal, the Commission preliminarily found that imports from Turkey were above the three percent threshold for exclusion from investigation on grounds of negligibility. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297, USITC Pub. 4570, at 14 (Oct. 2015) (Preliminary) ("Injury Prelim"), Appx0077; 19 U.S.C. § 1677(24).

After the issuance of the Commission's preliminary findings, Commerce ultimately found that one of the two mandatory respondents, Çolakoğlu Metalurji A.S. ("Çolakoğlu"), was not subsidized, and Çolakoğlu was therefore excluded from Commerce's final determination in the CVD investigation. This left Erdemir as the only Turkish producer found to have been subsidized. *See Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53433, 53434-35 (Dep't of Commerce Aug. 12, 2016) ("Turkey CVD Final"), Appx0284-85.

In the companion AD investigation, Commerce calculated an above *de minimis* dumping margin for Çolakoğlu as well as for Erdemir. *See Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative*

*Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53428, 53429 (Dep't of Commerce Aug. 12, 2016) ("Turkey LTFV Final"), Appx0288.

Crucially, because Commerce found that Çolakoğlu did not receive subsidies, the Commission excluded Çolakoğlu's imports from its final injury analysis in the CVD investigation. The Commission determined that the exclusion of Çolakoğlu's imports was significant and drove the Turkish subsidized import volume below the negligible levels and therefore terminated the CVD investigation with respect to Turkey. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016) ("HRS ITC Notice"), Appx0039-40; *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731- TA-1291-1297 (Final), USITC Pub. 4638, at 1 & n.2, 3, 12-14 (Sept. 2016) ("HRS ITC Final"), Appx0314 ("We consequently determine that subsidized subject imports from Turkey are negligible and terminate the countervailing duty investigation on hot-rolled steel from Turkey.").

In the AD injury case, however, because Çolakoğlu was found to have an above *de minimis* dumping margin, the Commission included Çolakoglu's imports with all Turkish imports as total subject imports from Turkey, found subject AD imports from Turkey were not negligible, and found material injury by reason of

subject imports from Turkey and other subject countries. *See* P.R.81, HRS ITC Final, USITC Pub. 4638, at 1, 3, 13, Appx0627 ("[I]mports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation. Hot-rolled steel imports from Turkey that are subject to the antidumping duty investigation were 7.4 percent of total imports during this period and therefore were above negligible levels."). Consequently, Commerce issued an AD order on hot-rolled steel from Turkey. *See Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders,* 81 Fed. Reg. 67962 (Dep't of Commerce Oct. 3, 2016) ("AD Order"), Appx0616.

## B. Çolakoğlu Successfully Appealed Commerce's Antidumping Determination

There were three appeals resulting from the Commerce and Commission decisions in the investigation – one by the U.S. producers and one each by Çolakoğlu and Erdemir. The U.S. producers challenged the Commission's negligibility determination and lost. *See Nucor Corp. v. United States*, 296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018). Çolakoğlu and Erdemir each appealed Commerce's final determination with respect to their own calculated rates, and the CIT consolidated the two cases. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 308 F.

Supp. 3d 1297, 1314-20, 1328 (Ct. Int'l Trade 2018) ("*Erdemir AD I*"); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 357 F. Supp. 3d 1325, 1329-34, 1336 (Ct. Int'l Trade 2018) ("*Erdemir AD II*"); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 415 F. Supp. 3d 1216, 1222-32 (Ct. Int'l Trade 2019) ("*Erdemir AD III*"); *Eregli Demir ve Çelik Fabrikalari T.A.S. v. United States*, 435 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2020) ("*Erdemir AD IV*").

Çolakoğlu's appeal of Commerce's final determination was successful; its imports were found not to have been dumped and therefore were excluded from the AD Order. *Erdemir AD IV,* 435 F. Supp. 3d at 1380 ("The changes resulted in an estimated weighted-average dumping margin of zero percent for Çolakoğlu and, thus, Çolakoğlu will be excluded from the relevant antidumping duty order."); *Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29399 (Dep't of Commerce May 15, 2020), Appx0617-18.

### C. Erdemir Moved the Commission To Give Effect to the Revised Commerce Determination

As a result of Çolakoğlu's appeal of Commerce's final determination, the

factual underpinnings of the CVD and AD investigations for purposes of the Commission's injury analysis became the same: one of two Turkish producers was removed from the purview of "subject imports," and this fundamentally changed the universe of imports. In light of this change, Erdemir took immediate steps to ensure adequate and lawful consideration and implementation of the results of the litigation in the AD proceeding through three separate agency proceedings.

First, immediately following the decision in *Erdemir AD IV*, Erdemir filed a letter with the Commission seeking reconsideration of the injury determination on the basis that Commerce had now excluded Çolakoğlu's imports, and as such, the total volume of Turkish imports would fall below the statutory threshold for negligibility. *See Letter from Erdemir to Commission re Request for Reconsideration* (May 18, 2020), Appx0625-26. The Commission did not respond.

Second, in September 2021, following this Court's dismissal of an appeal of the AD determination (*Eregli Demir ve Celik Fabrikalari T.A.S. v. United States*, Case No. 20-2003, Mandate Order (Fed. Cir. June 4, 2021), docketed in Case No. 16-00218, ECF No. 161 (Ct. Int'l Trade June 4, 2021)), Erdemir requested that the Commission initiate a changed circumstances review of the original determination to address subsequent changes since the issuance of the original injury determination and resulting AD Order. *See Letter from Erdemir to Commission re Changed Circumstances Review* (Sept. 10, 2021), Appx0655. The Commission denied the

request. *See Denial of Request to Institute a Section 751(b) Review; Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Inv. No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey*, 87 Fed. Reg. 73331 (Nov. 29, 2022), Appx0036-37.

Third, Erdemir participated in a sunset review before the Commission and requested the Commission give full effect to the intervening court decision that found imports from Turkish hot-rolled steel producer, Çolakoğlu, were fairly traded. The Commission, however, failed to consider Erdemir's request and instead noted that it addressed these considerations as part of its response to the reconsideration and changed circumstances review requests.

In sum, through all three proceedings, Erdemir was shut out of any administrative relief to implement the effect of the Çolakoğlu import exclusion.

## II.  JUDICIAL PROCEDURAL HISTORY

Erdemir's three administrative actions resulted in three separate appeals to the CIT. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, Case No. 22-cv-00349 (Ct. Int'l Trade 2024); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, Case No. 22-cv-00350 (Ct. Int'l Trade 2024); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, Case No. 22-cv-00351 (Ct. Int'l Trade 2024). The underlying CIT appeal for this case related to the Commission's decision not to initiate a reconsideration

proceeding. The CIT dismissed Erdemir's challenge to the Commission's decision not to initiate reconsideration proceedings, finding that it lacked subject matter jurisdiction. Erdemir now appeals the CIT's dismissal.

## SUMMARY OF THE ARGUMENT

The Commission's decision to reject Erdemir's request to initiate a reconsideration proceeding was not supported by substantial evidence or otherwise in accordance with law. Erdemir properly appealed the Commission's denial to the CIT pursuant to 28 U.S.C. § 1581(i), which is available when either (1) another subsection of § 1581 is or was not, or (2) the remedy provided under that other subsection would be manifestly inadequate. The Commission's decision not to initiate a reconsideration proceeding is not listed anywhere in 19 U.S.C. § 1516a, and thus cannot be brought under 28 U.S.C. § 1581(c). Even if jurisdiction under 28 U.S.C. § 1581(c) was available (which is was not), Erdemir's relief would have been reliant upon third-party actions and the court's grant of a stay pending the third-party actions, which cannot be adequate by any measure because it would be futile. Thus, the CIT erred in dismissing Erdemir's appeal for lack of subject matter jurisdiction.

**ARGUMENT**

## I.  STANDARD OF REVIEW

This Court, as an appellate body, has the authority to determine whether the CIT had jurisdiction over the underlying dispute, *see Interspiro USA v. Figgie Int'l, Inc.*, 18 F.3d 927, 930 (Fed. Cir. 1994), and reviews the lower court's jurisdictional determinations *de novo*.  *See Xerox Corp. v. United States*, 289 F.3d 792, 793-94 (Fed. Cir. 2002).

## II.  ERDEMIR'S CLAIMS PROPERLY FALL UNDER 28 U.S.C. § 1581(i)

Jurisdiction under 28 U.S.C. § 1581(i) is available when either (1) another subsection of § 1581 is or was not, or (2) the remedy provided under that other subsection would be "manifestly inadequate." *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012).

Here, for the reasons discussed below, and contrary to the CIT's finding, Erdemir's valid claim properly fell under § 1581(i) because jurisdiction was not available under any other subsection of the statute.  Nevertheless, had jurisdiction been available under another subsection of § 1581, jurisdiction under that subsection would have been manifestly inadequate.

### A.  The True Nature of Erdemir's Action is the Commission's Failure to Initiate Reconsideration Proceedings

Jurisdiction in this case is proper under 28 U.S.C. § 1581(i) because jurisdiction is not and could not have been available under any other subjection of

10

§ 1581. To determine whether jurisdiction under "another subsection could have been available, '[the Court looks] to the "true nature of the action."' *Suntec Indus. Co. v. United States*, 857 F.3d 1363, 1367 (Fed. Cir. 2017) (quoting *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016) (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008))).

Determining "[t]he true nature of a particular action will depend upon the attendant facts asserted in the pleadings." *Hutchison Quality Furniture,* 827 F.3d at 1360 (citing *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)); *Williams v. Sec'y of Navy*, 787 F.2d 552, 557-58 (Fed. Cir. 1986) (explaining that "the substance of the pleadings define a suit")). With this analysis, the Court must "discern the particular agency action that is the source of the alleged harm [to] identify which subsection of § 1581 provides the appropriate vehicle for judicial review." *Id.* (citing *National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988)).

The true nature of Erdemir's action is a challenge to the Commission's refusal to initiate a proceeding to reconsider its original AD injury determination in response to revisions to factual underpinnings of the determination that resulted from third-party litigation. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, Case No. 22-cv-00349, ECF No. 4 ("Complaint"), ¶¶ 17-21, 37-38 (Dec. 26, 2022). The third-

party litigation ultimately resulted in changes to findings by Commerce that fundamentally undercut the Commission's original injury determination. Thus, Erdemir properly – and timely – requested the Commission to consider the effect of Commerce's redetermination on the Commission's original AD determination.

Erdemir's request triggered the agency's "obligation to make corrections when it has been relying on erroneous factual assumptions." *Alberta Gas Chems., Ltd. v. Celanese Corp.*, 650 F.2d 9, 13 (2d Cir. 1981) (quoting *Greene County Planning Board v. Federal Power Commission*, 559 F.2d 1227, 1233 (2d Cir. 1976), *cert. denied*, 434 U.S. 1086 (1978)). Indeed, "reconsideration is often the sole means of correcting errors of procedure or substance." *Id.* (quoting *Bookman v. United States*, 453 F.2d 1263, 1265 (Ct. Cl. 1972)). Further, "[i]t is well established that, when an administrative agency denies a party's petition which seeks to 'reopen [a case] on the basis of new evidence or changed circumstances,' that decision is reviewable on appeal, and 'abuse of discretion is the standard.'" *Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1377 (Fed. Cir. 2011) (quoting *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987)).

A Commission decision not to initiate a reconsideration proceeding is not listed anywhere in 19 U.S.C. § 1516a, and thus cannot be brought under 28 U.S.C. § 1581(c). This claim is different from challenges to a decision not to initiate a changed circumstances review or to a sunset review determination, both of which

are listed under 19 U.S.C. § 1516a(a)(1)(B) (changed circumstances review) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (sunset review), and thus can only be brought under 28 U.S.C. § 1581(c). In other words, Erdemir had an independent right to seek reconsideration.

Despite these facts the CIT misconstrued "the source of the alleged harm" to Erdemir in its decision. *See* Appx0020-21. The CIT found the source of the alleged harm to be the Commission's negligibility analysis in its original determination. *See* Appx0020. In making this finding, however, the CIT disregards the fact that Erdemir appealed the Commission's decision not to initiate a reconsideration proceeding and not the original injury determination. Again, Erdemir had a separate legal course of action pursuant to the agency's obligation to correct erroneous factual assumptions.

The Commission's decision not to initiate a reconsideration proceeding was unlawful. The alleged harm therefore is the Commission's failure to initiate a reconsideration proceeding and to afford any consideration of the effect the revised Commerce determination post-judicial appeal would necessarily have on the Commission's original injury determination. Of course, if the Commission appropriately considers the effect of Commerce's revised determination and thereafter revokes the AD Order, Erdemir will likely benefit from such a decision. But that does not make the original determination the alleged harm from which

Erdemir now seeks redress by the courts.

## B. Erdemir Did Not Have a Cognizable Claim Under 28 U.S.C. § 1581(c) Within the Time Allowed For Such Appeals

Erdemir disputes that the true nature of its action is the Commission's negligibility analysis in the original investigation as it has separate recourse through reconsideration proceedings, but even more, Erdemir did not have any cognizable claims against the Commission under any other subsection of § 1581 at the time of the final injury determination or within any appeal period under those subsections, and in particular, § 1581(c). Such claims only became cognizable when Commerce revised its final determination with respect to Çolakoğlu, thereby changing the facts on which the Commission made its final injury determination.

At the time when the Commission made its original injury determination, it did not have final judicial confirmation of its negligibility determination. Once the CIT ordered a revision of those factual underpinnings, the Commission's affirmative AD determination with respect to Çolakoğlu was invalidated, as is clear from the result in the corresponding CVD investigation.

However, because the Commission based its original determination on the facts before it when it made the determination, Erdemir did not have standing because its appeal would have been moot from the start. A case is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees*, 567 U.S. 298, 307 (2012) (internal quotation marks

omitted). "The mootness doctrine applies when 'events have so transpired that the [court's] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Jem D Int'l (Mich.) Inc. USA v. United States*, 470 F. Supp. 3d 1374, 1380 (Ct. Int'l Trade 2020) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (citation omitted)).

The court could not grant Erdemir relief absent any changes resulting from the outcome of a separate appeal finding that those facts were inaccurate. Whether the facts presented to the Commission by Commerce were accurate is a different question that first required an appeal of Commerce's determination and an affirmative finding that such facts were not. Until then, neither the Commission nor a court could lawfully decide that the Commission's negligibility determination was inaccurate. Consequently, any appeal of the Commission's negligibility determination within the period prescribed under § 1581(c) would not have been legally cognizable and therefore dismissed.

Despite these facts, the CIT wrongly determined that Erdemir could have appealed the Commission's original determination under § 1581(c) and sought a stay pending the outcome of litigation before Commerce. *See* Appx0022-27. On what basis is unclear. The CIT's finding seemingly rests on Erdemir's awareness at the time of the Commission's original determination that if Çolakoğlu's imports were

excluded from the injury analysis, it would have changed the outcome of the Commission's negligibility determination. *See* Appx0023-24. Because Erdemir could determine how the outcome of a successful appeal by Çolakoğlu might affect the Commission's negligibility findings if the Commission were to reconsider its original determination based on the revised facts, the CIT disagreed that any challenge to the Commission's final affirmative determination would have been frivolous or speculative. *See* Appx0024.

The lower court's logic, however, is flawed for several reasons. First, all parties always have the ability to understand the effect of a successful appeal, including any effects it may have on other segments of a proceeding. However, parties can only speculate whether the appeal will be successful. As such, any claims that rely on the success of another, independent appeal is by definition a speculative claim. Here, a challenge by Erdemir of the Commission's original determination under § 1581(c) would be speculative because it was valid, if and only if Çolakoğlu's appeal was successful.

Second, even if Erdemir was certain how the outcome of Çolakoğlu's appeal might affect the Commission's negligibility findings, in order to challenge the original injury determination, Erdemir nevertheless would have had to speculate that (i) Çolakoğlu would challenge Commerce's determination; (ii) Çolakoğlu would not abandon its challenge of Commerce's determination; (iii) Çolakoğlu was successful

in its challenge; and (iv) as a result of Çolakoğlu's challenge, its rate became *de minimis*. If any one of the items in (i) – (iv) are not satisfied, then Erdemir would not have a claim.

Third, the lower court's logic would create a cause of action that is reliant on independent, third-party actions. Erdemir would have a claim under § 1581(c) only if Çolakoğlu, an independent third party, sought an appeal – something over which Erdemir has no control. Erdemir's ability to appeal and only opportunity for relief would therefore be tied to third-party action. Binding Erdemir's ability to obtain relief to third-party actions, however, fails to account for important practicalities. For example, if Çolakoğlu filed its appeal against Commerce's final determination on 11:59 pm on the final day on which a claim under § 1581(c) must be filed, would this obligate Erdemir to file its claim within the minute remaining? Must Erdemir speculate that Çolakoğlu would raise the appeal and file a challenge in advance? These questions highlight the absurdity and flaws in the lower court's logic.

The CIT ignores these logical flaws and instead attempts to support its finding that a claim under § 1581(c) was available by inaccurately stating Erdemir was in the same position as other litigants that pursued § 1581(c) claims against decisions by Commerce and the Commission while seeking a stay on the action against the Commission. *See* Appx0025-27 ("The path pursued by other litigants in plaintiff's position establishes that plaintiff in the instance case could have asserted jurisdiction

under § 1581(c) to challenge the Commission's final affirmative determination of material injury," citing *Diamond Sawblades Mfrs' Coalition v. United States*, Slip Op. 15-92, 2015 WL 4978726 (Ct. Int'l Trade Aug. 20, 2015); *Encon Indus., Inc. v. United States*, 18 CIT 867 (1994); *Boomerang Tube LLC v. United States*, 125 F. Supp. 3d 1357 (Ct. Int'l Trade 2015); *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232 (Ct. Int'l Trade 2016) (voluntarily dismissed without determination)).  The litigants in proceedings cited by the CIT, however, were not in the same position as Erdemir.  In all of these proceedings, the litigant initiated and was in control of both appeals; the litigant's claims were not reliant on a third party's appeal.  In contrast, Erdemir's claims were wholly reliant on Çolakoğlu's appeal. Thus, all of the cases relied upon by the CIT are distinguishable from the current case.

### C.  Even If Erdemir Had a Cognizable Claim Under 28 U.S.C. § 1581(c), The Remedy Provided Would Be Manifestly Inadequate

To the extent this Court finds that jurisdiction under 28 U.S.C. § 1581(c) could have been available, jurisdiction under § 1581(c) could only have been manifestly inadequate.  "To be manifestly inadequate, the protest must be an 'exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193-94 (Fed. Cir. 2018) (quoting *Hartford Fire Ins. Co.*, 544 F.3d at 1294 (internal citations omitted)).  As discussed above, Erdemir's appeal was wholly

reliant upon third-party actions and the court granting a stay pending the outcome of Çolakoğlu's appeal of Commerce's final determination. Relief reliant upon third-party actions and the court's grant of a stay pending the third-party actions cannot be adequate by any measure because it would be futile.

Relying on the third-party actions and a stay as prerequisites to obtaining relief is supremely speculative. The level of speculation would preclude a court from taking the necessary actions to provide Erdemir adequate relief – namely, to stay an appeal of the Commissions' original injury determination. The CIT addressed these issues in *LG Elecs., Inc. v. ITC*, 37 CIT 1589 (2013) ("*LG Elecs I*") and *LG Elecs., Inc. v. ITC*, 38 CIT 103 (2014) ("*LG Elecs II*").

In *LG Elecs I* and *LG Elecs II*, plaintiffs appealed Commerce's and the Commission's final determinations in an AD investigation and sought to stay the appeal of the Commission's final determination pending the outcome of the appeal of Commerce's final determination. The plaintiffs sought a stay acknowledging that their appeal of the Commission's final determination is wholly reliant upon the outcome of their appeal of Commerce's final determination. *See LG Elecs I* at 1589. Under these circumstances, the court denied the stay request and noted it was not appropriate when the nexus between the possible outcome of the Commission-related case was speculative and reliant upon possible outcome of the Commerce-related case. *See id*. at 1593. The court explained that plaintiffs "only alleged the

possibility that the court may remand to Commerce, and the possibility that upon remand Commerce would recalculate either de minimis or dramatically lower margins, and the possibility that such determinations would be affirmed by the court." *Id.* The court went on to note that "Commerce may not remand, the margins may not be reduced and even if they are reduced they may not be reduced enough to affect the [Commission's] analysis." *Id.*; *see also LG Elecs II* at 106 ("Plaintiffs' argument is based upon the notion that there may come a time when Commerce will have to reconsider its determinations…that could affect the ITC's determination. Those new determinations, if they ever come to pass, would replace the hypothetically-incorrect determination.").

The same issues present in *LG Elecs I* and *LG Elecs II* are true here. For Erdemir to obtain relief, the court had to remand Commerce's determination, Commerce had to recalculate *de minimis* margins, and the court had to affirm Commerce's remand redetermination. And Erdemir's claims were even more speculative than those in *LG Elecs I* and *LG Elecs II* because they were wholly reliant on a third party. Given the highly speculative nature of these outcomes, as the court noted in *LG Elecs I*, a stay would not have been appropriate, and Erdemir's attempt to seek relief under § 1581(c) would have been futile.

Erdemir acknowledges that in prior cases, the CIT has remanded an appeal of the Commission's final injury determination – despite the Commission's interest in

finality – to reconsider issues in light of final court decisions in parallel appeals, but these have been coincidental occurrences, and based upon this Court's authority to "order any other form of relief that is appropriate in a civil action." 28 U.S.C. § 2643(c)(1); *see*, *e.g.*, *Usinor Industeel, S.A. v. United States*, 26 CIT 1402, 1407 (2002) (finding that sunset review was based upon incorrect data after unique circumstances of a Federal Circuit opinion issued during the *Usinor* appeal that changed the scope of the investigation and remanding for reconsideration of decisions affected by change in data after the change in scope) (citing *Borlem S.A. Empreedimentos Industrias v. United States*, 913 F.2d 933, 939 (Fed. Cir. 1990) (finding the CIT has the authority to order the Commission, on remand, to reconsider a prior determination where such decision was based on erroneous data)). These rare and coincidental cases do not address the issues identified above by Erdemir and highlighted by the CIT in *LG Elecs I* and *LG Elecs II*. They therefore do not indicate that jurisdiction under § 1581(c) would not be manifestly inadequate.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, this Court should reverse the CIT, find that the lower court had jurisdiction to over Erdemir's claims under § 1581(i), and remand to the CIT for further proceedings.

Dated: November 20, 2024　　　　Respectfully submitted,

/s/ Christine M. Streatfeild
Christine M. Streatfeild
Justin R. Becker
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff-Appellant,*
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-2243

**Short Case Caption:** Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  4,728  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 11/20/2024

Signature: /s/ Christine M. Streatfeild

Name: Christine M. Streatfeild

Save for Filing

# ADDENDUM

# ADDENDUM OF REQUIRED DOCUMENTS

## TABLE OF CONTENTS

| Tab No. | Document | Confidentiality Designation | Appendix Page No. |
|---------|----------|------------------------------|-------------------|
| 1 | *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00349, Judgment (Ct. Int'l Trade July 22, 2024) | Public | Appx0001 |
| 2 | *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00349, Slip Op. 24-81 (Ct. Int'l Trade July 22, 2024) | Public | Appx0002 |
| 3 | *Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73331 (Int'l Trade Comm'n Nov. 29, 2022) | Public | Appx0036 |
| 4 | *Affirmative Final Determination in Investigation Nos. 701–TA–545–547 and 731–TA–1291–1297 (Final), Hot-Rolled Steel Flat Products From Turkey*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016) | Public | Appx0039 |

# TAB 1:

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00349, Judgment  (Ct. Int'l Trade July 22, 2024)

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>Defendant,<br><br>and<br><br>**CLEVELAND-CLIFFS INC., NUCOR CORPORATION, STEEL DYNAMICS, INC. and SSAB ENTERPRISES, LLC,**<br><br>Defendant-Intervenors. | Before: Timothy M. Reif, Judge<br><br>Court No. 22-00349 |

## JUDGMENT

This case having been submitted for decision, and the court, after due deliberation, having rendered an opinion; now in conformity with that opinion, it is hereby

**ORDERED** that defendant-intervenors' motion to dismiss for lack of subject matter jurisdiction is granted; and it is further

**ORDERED** that this action is dismissed.

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated:    July 22, 2024
            New York, New York

# TAB 2:

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00349, Slip Op. 24-81 (Ct. Int'l Trade July 22, 2024)

Slip Op. 24-81

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,**

       Plaintiff,

v.

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**

       Defendant,

and

**CLEVELAND-CLIFFS INC., NUCOR CORPORATION, STEEL DYNAMICS, INC. and SSAB ENTERPRISES, LLC,**

       Defendant-Intervenors.

</td><td>

Before: Timothy M. Reif, Judge

Court No. 22-00349

</td></tr>
</table>

### OPINION

[Granting defendant-intervenor's motion to dismiss.]

Dated:  July 22, 2024

David L. Simon, Law Offices of David L. Simon, PLLC, of Washington, D.C., argued for plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş.  With him on the brief was Mark B. Lehnardt.

Frank H. Morgan, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, D.C., argued for defendant U.S. International Trade Commission.  With him on the brief were Andrea C. Casson, Assistant General Counsel for Litigation, and Michael K. Haldenstein, Attorney-Advisor.

Jeffrey D. Gerrish, Schagrin Associates, of Washington, D.C., argued for defendant-intervenors.  With him on the brief were Roger B. Schagrin and Saad Y. Chalchal, Schagrin Associates, of Washington, D.C., for defendant-intervenors Steel Dynamics, Inc. and SSAB Enterprises, LLC, Alan H. Price, Christopher B. Weld, and Theodore P. Brackemyre, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor

Corporation, and <u>Stephen P. Vaughn</u>, <u>Neal Reynolds</u>, and <u>Barbara Medrado</u>, King & Spalding LLP, of Washington, D.C., for defendant-intervenor Cleveland-Cliffs Inc.

 Reif, Judge:  Before the court is defendant-intervenors' motion to dismiss plaintiff's complaint.  Def.-Intervenors' Mot. to Dismiss ("Def.-Intervenors Br."), ECF No. 53.  Plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("plaintiff" or "Erdemir") invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1581(i)(1)(B) and (D), alleging that plaintiff has been "adversely affected or aggrieved" by the decision of the U.S. International Trade Commission (the "Commission") to deny plaintiff's request for a reconsideration proceeding.[1]  Am. Compl. ¶ 3, ECF No. 14.  Plaintiff states that the Commission's decision relates to "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and the "administration and enforcement" of those duties.  *Id.* (citing U.S.C. § 1581(i)(1)(B) and (D)).  *Id.* Defendant-intervenors respond that (1) this court lacks subject matter jurisdiction over plaintiff's claims under § 1581(i) and (2) even if the court did have jurisdiction, plaintiff has failed to state a claim upon which relief can be granted.  Def.-Intervenors Br. at 3-4.

 The court concludes that it lacks subject matter jurisdiction over the instant action.  An adequate remedy was available to plaintiff to challenge the final determination of the Commission.  Plaintiff did not avail itself of that remedy.  Now,

---

[1] The Commission filed a statement in support of defendant-intervenors' motion to dismiss, in which the Commission agreed with the position of defendant-intervenors that this case should be dismissed.  Statement in Support of Def.-Intervenors' Mot. to Dismiss, ECF No. 54.  According to the Commission at oral argument, defendant-intervenors "had said everything that needed to be said and the Commission as an institution wanted to support that view but not separately file a motion."  Oral Arg. Tr. at 34:6-9, ECF No. 71.  The court considers it unusual — to say the least — that a government agency against which an action has been filed has declined to file its own motion to dismiss.

plaintiff would have the court act to expand the scope of the court's residual jurisdiction

to fashion a remedy that the law does not provide.  The court declines, as it must, to do

so.

### BACKGROUND

**I.**   **The final determination of the Department of Commerce of sales at less than fair value and the Commission's final affirmative determination of material injury**

In August and September 2015, the United States Department of Commerce

("Commerce") initiated and the Commission instituted investigations in response to

petitions filed on behalf of the domestic industry requesting the imposition of

antidumping and countervailing duties on imports of hot-rolled steel flat products from

various countries (including Turkey).  *Certain Hot-Rolled Steel Flat Products from*

*Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom;*

*Institution of Antidumping and Countervailing Duty Investigations and Scheduling of*

*Preliminary Phase Investigations*, 80 Fed. Reg. 50,028 (ITC Aug. 18, 2015); *Certain*

*Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the*

*Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-*

*Fair-Value Investigations*, 80 Fed. Reg. 54,261 (Dep't of Commerce Sept. 9, 2015);

*Certain Hot-Rolled Steel Flat Products from Brazil, the Republic of Korea, and Turkey:*

*Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54,267 (Dep't of

Commerce Sept. 9, 2015).

On October 1, 2015, the Commission made an affirmative preliminary

determination that there was a reasonable indication that an industry in the United

States was materially injured due to imports of hot-rolled steel flat products from the

subject countries.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, USITC Pub. No. 4570, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Oct. 2015), at 3.

The Commission preliminarily determined also that the volume of imports of hot-rolled steel from Turkey was above the three percent threshold for exclusion from the investigation on grounds of negligibility.[2]  *Id.* at 13.

On August 12, 2016, Commerce published its affirmative final countervailing duty determination for Turkey.  *Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433 (Dep't of Commerce Aug. 12, 2016).

Commerce found that Çolakoğlu Dis Ticaret A.Ş. ("Colakoglu") — another Turkish producer of hot-rolled steel — received a de minimis level of countervailable subsidies. *Id.* at 53,434.  However, Commerce made an affirmative determination because it calculated a 6.01 percent net countervailable subsidy rate for Erdemir.  *Id.*  All remaining Turkish producers and exporters were assigned Erdemir's 6.01 percent CVD rate.  *Id.*  Also on August 12, 2016, Commerce published its affirmative final determination of sales at less than fair value for Turkey.  *Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Determination of Sales at Less Than Fair Value* ("*Final Determination of Sales at Less Than Fair Value*"), 81 Fed. Reg. 53,428 (Dep't of

---

[2] 19 U.S.C. § 1677(24)(A)(i) defines "negligible imports" as "imports from a country of merchandise corresponding to a domestic like product identified by the Commission" that "account for less than 3 percent of the volume of all such merchandise imported into the United States in the most recent 12-month period for which data are available that precedes" the filing of a petition under § 1673a(b) or the initiation of an investigation under § 1673a(a).

Commerce Aug. 12, 2016).  Commerce determined that Colakoglu was selling hot-rolled

steel in the United States for less than fair value and calculated a weighted-average

dumping margin of 7.15 percent.  *Id.* at 53,429.

On September 29, 2016, the Commission published its affirmative final

determinations that an industry in the United States was materially injured due to

imports of hot-rolled steel flat products from the subject countries.[3]  *Certain Hot-Rolled

Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and

the United Kingdom*, 81 Fed. Reg. 66,996 (ITC Sept. 29, 2016).  As to Turkey, the

Commission explained that "imports from Turkey that are subject to the antidumping

duty investigation are different from those subject to the countervailing duty

investigation" because Colakoglu's final net countervailable subsidy rate was de

minimis.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea,

the Netherlands, Turkey, and the United Kingdom* ("*Final Determination of Material

Injury*"), USITC Pub. 4638, Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Sept.

2016), at 13.

Colakoglu's imports were excluded from the Commission's injury analysis in the

CVD investigation because "Colakoglu received a de minimis subsidy margin."  *Id.*  As a

result of the exclusion of Colakoglu's imports, the volume of imports from Turkey subject

---

[3] When evaluating whether the domestic industry is materially injured by reason of
imports sold at less than fair value, the Commission is required to consider "the volume
of imports of the subject merchandise," "the effect of imports of that merchandise on
prices in the United States for domestic like products," and "the impact of imports of
such merchandise on domestic producers of domestic like products."  19 U.S.C. §
1677(7)(B)(i)(I)-(III).  Under § 1677(7)(C)(iii)(V), in examining the impact on the affected
domestic industry, "the Commission shall evaluate all relevant economic factors . . .
including, but not limited to . . . the magnitude of the margin of dumping."

to the CVD investigation fell below the negligibility threshold.[4]  *Id.*  Because subsidized imports from Turkey were negligible, the Commission "terminate[d] the countervailing duty investigation on hot-rolled steel from Turkey."  *Id.* at 14; *see also* 19 U.S.C. § 1677(24)(A)(i).[5]

However, because Commerce determined that Colakoglu's imports were sold at less than fair value, *Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. at 53,429, Colakoglu's imports were included in the Commission's negligibility analysis for purposes of its antidumping duty determination.  *See Final Determination of Material Injury*, USITC Pub. 4638 at 13.  The Commission determined that the volume of imports subject to the AD investigation exceeded the negligibility threshold.  *Id.*

As a result, the Commission's final determination of material injury applied only to dumped imports from Turkey — not to subsidized imports from Turkey.  *Id.* at 3.  The Commission analyzed subject imports on a cumulated basis, meaning that the Commission cumulated dumped imports from Turkey with subject imports from Australia, Brazil, Japan, Korea, the Netherlands and the United Kingdom found by Commerce to be dumped or subsidized.  *Id.* at 17-21.  The Commission determined that an industry in the United States was materially injured by reason of the cumulated subject imports.  *Id.* at 21, 39-47, 52.

October 3, 2016, Commerce published the final AD order on imports of hot-rolled steel flat products from Turkey.  *Certain Hot-Rolled Steel Flat Products from Australia,*

---

[4] Plaintiff states in its complaint that Colakoglu is the "largest shipper" of hot-rolled steel from Turkey.  Am. Compl. at 1.

[5] 19 U.S.C. § 1673d(b)(1) requires that "[i]f the Commission determines that imports of the subject merchandise are negligible, the investigation shall be terminated."

*Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016).

Commerce calculated revised dumping margins of 6.77 percent for Colakoglu, 4.15 percent for Erdemir and 6.41 percent for all other producers or exporters. *Id.* at 67,965.

## II.    Colakoglu and Erdemir challenged Commerce's final determination

Colakoglu and Erdemir appealed Commerce's final determination of sales at less than fair value.  On April 13, 2020, this Court entered judgment sustaining Commerce's third remand redetermination.  *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 44 CIT __, 435 F. Supp. 3d 1378 (2020)*; see also Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 43 CIT __, 415 F. Supp. 3d 1216 (2019); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 42 CIT __, 357 F. Supp. 3d 1325 (2018); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 42 CIT __, 308 F. Supp. 3d 1297 (2018).[6]

On May 15, 2020, Commerce published an amended final determination with recalculated weighted-average dumping margins.  *Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final*

---

[6] Nucor Corporation, one of the six domestic producers that filed petitions in the hot-rolled steel investigations, appealed the Commission's negligibility determination in the CVD investigation.  *Nucor Corp. v. United States*, 42 CIT __, __, 296 F. Supp. 3d 1276, 1294 (2018).  On February 28, 2018, this Court affirmed the Commission's negligibility determination.  *Id.*

*Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29,399 (Dep't of Commerce May 15, 2020).  Those margins were zero percent for Colakoglu, 2.73 percent for Erdemir and 2.73 percent for all other producers or exporters.  *Id.* at 29,400.

Commerce partially revoked the AD order to exclude merchandise produced and exported by Colakoglu because Colakoglu's dumping margin was reduced to zero.[7]  *Id.* at 29,400 ("Commerce is hereby excluding merchandise produced and exported by [Colakoglu] from the Order.").

Therefore, Colakoglu was successful in its appeal of Commerce's final determination of sales at less than fair value.  However, none of the Turkish respondents challenged the Commission's final material injury determination concerning dumped imports from Turkey.

## III.    Plaintiff requested that the Commission institute reconsideration proceedings or a changed circumstances review

After Commerce excluded Colakoglu from the AD order on hot-rolled steel from Turkey — and with appeals of the USCIT judgment still pending before the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") — Erdemir in letters filed in May and

---

[7] Both the United States and domestic producers appealed the judgment of the USCIT. On December 18, 2020, the United States voluntarily dismissed its appeal.  *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, No. 20-1999, Mandate Order (Fed. Cir. Dec. 18, 2020).  Then, on June 4, 2021, domestic producers voluntarily dismissed their appeal.  *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 20-2003, Mandate Order (Fed. Cir. June 4, 2021), docketed in Ct. No. 16-00218, ECF No. 161 (Ct. Int'l Trade June 4, 2021).

July 2020 requested reconsideration of the Commission's original material injury

determination.[8]  Am. Compl. ¶¶ 21-23; Def.-Intervenors Br. at 9-10.

On September 1, 2021, Commerce initiated and the Commission instituted the

first sunset review of the AD and CVD orders on hot-rolled steel flat products from

multiple countries.  *Initiation of Five-Year (Sunset) Reviews*, 86 Fed. Reg. 48,983 (Dep't

of Commerce Sept. 1, 2021); *Hot-Rolled Steel Flat Products from Australia, Brazil,*

*Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of*

*Five-Year Reviews*, 86 Fed. Reg. 49,057 (ITC Sept. 1, 2021); *see also* 19 U.S.C. §

1675(c).

Then, on September 10, 2021, after the United States and domestic producers

had voluntarily dismissed their appeals of the judgment of the USCIT in the challenges

to the Commerce determination, Erdemir requested that the Commission institute a

changed circumstances review to revisit its affirmative final determination of material

injury in the original investigation.  Am. Compl. ¶ 26; *Hot-Rolled Steel Flat Products from*

*Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review*

*Concerning the Commission's Affirmative Determination* ("*Request for Comments*"), 86

Fed. Reg. 68,512, 68,513 (ITC Dec. 2, 2021).  Erdemir argued that "Commerce's

recalculation of Colakoglu's antidumping duty margin to zero percent and its exclusion

from the antidumping duty order as a result of judicial review constitute significantly

---

[8] The court does not quote directly from these letters as it would have preferred
because the Commission did not include the documents in the administrative record
filed by the Commission.  *See* Index of the Administrative Record and Documents
Furnished Pursuant to USCIT Rule 73.2(b) at 3-4, ECF No. 35 (stating that the parties
"have stipulated that at this time the Commission will file fewer documents" than
required to be filed by the Rules).

changed circumstances from those in existence at the time of the original investigation because the facts underlying the Commission's negligibility determination completely changed."  *Request for Comments*, 86 Fed. Reg. at 68,513.

**IV.    The Commission conducted a full sunset review and denied plaintiff's request for reconsideration or a changed circumstances review**

On December 6, 2021, the Commission determined to conduct full sunset reviews of the hot-rolled steel orders.[9]  *Notice of Commission Determination To Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom* ("*Notice of Full Five-Year Reviews*"), 87 Fed. Reg. 3,123 (ITC Jan. 20, 2022).  In those reviews, plaintiff maintained that the Commission should conduct a changed circumstances review or reconsideration proceeding so that the Commission could correct its negligibility analysis in light of the exclusion of Colakoglu from Commerce's AD order.  *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom* ("*Sunset Review Determination*"), USITC Pub. No. 5380, Inv. Nos. 701-

---

[9] 19 U.S.C. § 1675(c)(5) requires the Commission to complete a full sunset review "within 360 days after the date on which a review is initiated," unless there is no response to the notice of initiation, or the response to the notice of initiation is inadequate.  *See* 19 U.S.C. § 1675(c)(3)(A)-(B).  On September 1, 2021, the Commission published notice of the institution of the sunset reviews.  *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057, 49,058 (ITC Sept. 1, 2021) ("The Commission will assess the adequacy of interested party responses to this notice of institution to determine whether to conduct a full review or an expedited review.").  Then, on December 6, 2021, "the Commission determined that it should proceed to full reviews in the subject five-year reviews" because "the domestic interested party group response and the respondent interested party group responses from Australia, Brazil, Japan, the Netherlands, Turkey, and the United Kingdom to its notice of institution . . . were adequate."  *Notice of Full Five-Year Reviews*, 87 Fed. Reg. at 3,124.

TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review) (Nov. 2022), at 26 n.132.  Plaintiff argued also that the Commission should reverse its original negligibility determination involving dumped imports from Turkey in the sunset reviews. *Id.*

Then, on November 29, 2022, the Commission "declined to institute a [changed circumstances review] . . . or grant reconsideration" as requested by plaintiff in light of the exclusion of Colakoglu from the AD order.  *Hot-Rolled Steel Flat Products from Turkey; Denial of Request to Institute a Section 751(b) Review; Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey* ("*Denial of Request for CCR and Reconsideration*"), 87 Fed. Reg. 73,331 (ITC Nov. 29, 2022).  The Commission determined that a changed circumstances review "would be duplicative of the full five-year review" and "does not provide an opportunity for the Commission to reconsider and amend its original injury determination."  *Id.* at 73,332.  As a result, the Commission denied Erdemir's request.  *Id.*

In that decision, the Commission noted that Erdemir's comments of January 2022 requesting a changed circumstances review included also an alternative request that the Commission institute a reconsideration proceeding.  *Id.*  The Commission declined plaintiff's request for reconsideration of its negligibility analysis and the finding of non-negligibility with respect to the original AD investigation of hot-rolled steel flat products from Turkey.  *Id.* at 73,332-73,333.

The Commission explained that its reconsideration authority is reserved for "extraordinary circumstances," such as when reconsideration is necessary to protect the integrity of its proceedings from fraud. *Id.* at 73,332. In the instant proceedings, the Commission determined that there was "no evidence of fraud or other facts that suggest extraordinary circumstances" and therefore concluded that "the recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products" did not warrant reconsideration. *Id.* To support that conclusion, the Commission relied on legislative history "in which Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis."[10] *Id.*

According to the Commission, Erdemir was required to challenge the Commission's affirmative material injury determination in the original investigation, which was the sole "path for Erdemir to avail itself to preserve its rights to obtain a reexamination of the Commission's original determination in light of the subsequent successful appeal of Commerce's final original determination that resulted in a de minimis dumping margin for Colakoglu and exclusion of imports from Colakoglu from

---

[10] Commissioners Kearns and Karpel did not join the Commission's decision on this point. *See Denial of Request for CCR and Reconsideration Proceeding*, 87 Fed. Reg. at 73,332 n.1. In the view of Commissioners Kearns and Karpel, "it is not clear that 19 U.S.C. [§] 1677(7)(C)(iii)(v) and [§] 1677(35)(C) and the related SAA language address the circumstances here" because those provisions and the accompanying language in the SAA pertain to "the 'magnitude of margins of dumping' that the Commission is to consider in its *impact* analysis." *Id.* (emphasis supplied). Here, the Commissioners added, plaintiff had requested that the Commission "reconsider its *negligibility* analysis for purposes of 19 U.S.C. [§] 1673d(b)(1) and 19 U.S.C. [§] 1677(24)." *Id.* (emphasis supplied).

the scope of Commerce's final affirmative antidumping duty determination."  *Id.* at

73,333.

The Commission explained that "[t]he potential impact on Erdemir at the time that

Erdemir and Colakoglu appealed Commerce's final antidumping duty determination was

known to Erdemir at that time, and[,] in fact, Erdemir joined Colakoglu in appealing

Commerce's original determination."  *Id.*  The Commission determined, as a result, that

"[t]he interests of finality of the agency's decision are paramount under the

circumstances presented."  *Id.*  The Commission therefore denied Erdemir's request for

reconsideration.  *Id.*

On November 25, 2022, the Commission completed its first sunset review and

determined that revocation of the AD order on hot-rolled steel flat products from Turkey

would be likely to lead to continuation or recurrence of material injury.  *See Hot-Rolled*

*Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the*

*United Kingdom*, 87 Fed. Reg. 74,167 (ITC Dec. 2, 2022).  The Commission analyzed

subject hot-rolled steel imports from Turkey on a cumulated basis[11] with subject imports

from Australia, Japan, the Netherlands, South Korea, Russia and the United Kingdom

and determined that revocation of the AD order on hot-rolled steel flat products from

Turkey would be likely to lead to continuation or recurrence of material injury.[12]  *Sunset*

*Review Determination*, USITC Pub. No. 5,380 at 48, 67; *see also* 19 U.S.C. §

1675a(a)(7).  Thereafter, Commerce published a notice of continuation of the AD order.

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of*

*Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Continuation*

*of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and the*

*United Kingdom) and Countervailing Duty Order (Korea) and Revocation of*

*Antidumping and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dep't of

Commerce Dec. 22, 2022).

---

[11] 19 U.S.C. § 1677(7)(G)(i) requires that the Commission "cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which . . . (I) petitions were filed under section 1671a(b) or 1673a(b) of this title on the same day, (II) investigations were initiated under section 1671a(a) or 1673a(a) of this title on the same day, or (III) petitions were filed under section 1671a(b) or 1673a(b) of this title and investigations were initiated under section 1671a(a) or 1673a(a) of this title on the same day," so long as such imports compete with each other and with domestic like products in the United States market.  However, the statute also prohibits the Commission from cumulatively assessing the volume and effect of imports under clause (i) "from any country with respect to which the investigation has been terminated."  19 U.S.C. § 1677(7)(G)(ii)(II).  This exception — that imports that are the subject of terminated investigations may not be cumulated — "implements the requirements of the [URAA] that negligible or de minimis imports not be cumulated."  *Statement of Administrative Action Accompanying the Uruguay Round Agreements Act*, H.R. Rep. No. 103-316, vol. 1 (1994), at 849, *reprinted in* 1994 U.S.C.C.A.N. 4040 ("SAA").

[12] In its sunset reviews, the Commission indicated that it would address outside of the sunset reviews plaintiff's request for a changed circumstances review or reconsideration proceeding.  *Sunset Review Determination*, USITC Pub. No. 5380 at 48 n.298.

Plaintiff then brought multiple actions to challenge different decisions made by the Commission during the course of the proceedings before the agency.  In the instant action, plaintiff contends that it was "adversely affected or aggrieved by the Commission's decision not to conduct a reconsideration proceeding within the meaning of the APA."  Am. Compl. ¶ 5 (citing 5 U.S.C. § 702; 28 U.S.C. § 2631(i)).

On June 13, 2024, the court held oral argument.  *See* Oral Arg. Tr., ECF No. 71.

## JURISDICTION AND STANDARD OF REVIEW

Whether a court has subject matter jurisdiction to hear an action is a "threshold" inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Plaintiff files its action under 28 U.S.C. § 1581(i)(1)(B) and (D), which provide:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for —

(A) . . .
(B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; [or]
(C) . . .
(D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section.

Section 1581(i) is the Court's "residual" jurisdictional provision, *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002) (citing *Conoco, Inc. v. United States Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1584 n.4 (Fed. Cir. 1994)), which allows the Court to "take jurisdiction over designated causes of action founded on other provisions of law."  *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992) (citation omitted).

However, the "scope" of § 1581(i) is "strictly limited," *id.*, and jurisdiction under this provision "may not be invoked when jurisdiction under another [sub]section of § 1581 is or could have been available, unless the relief provided under that other subsection would be manifestly inadequate." *Consol. Bearings Co. v. United States*, 25 CIT 546, 549, 166 F. Supp. 2d 580, 583 (2001) (alterations in original) (internal quotation marks omitted) (quoting *Ad Hoc Comm. of Fla. Producers of Gray Portland Cement v. United States*, 22 CIT 902, 906, 25 F. Supp. 2d 352, 357 (1998)); *see also* 28 U.S.C. § 1581(i)(2)(A) (providing that "[§ 1581(i)] shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by . . . the Court of International Trade under [§ 1581(c)].").

With respect to defendant-intervenors' USCIT Rule 12(b)(6) motion for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff." *Env't One Corp. v. United States*, 47 CIT __, __, 627 F. Supp. 3d 1349, 1355 (2023) (quoting *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000)); USCIT Rule 12(b)(6).

"A court may properly dismiss a claim pursuant to [USCIT] Rule 12(b)(6) only if Plaintiff['s] allegations of fact are not 'enough to raise a right to relief above the speculative level.'" *VoestAlpine USA Corp. v. United States*, 46 CIT __, __, 578 F. Supp. 3d 1263, 1276 (2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  To survive a motion to dismiss, plaintiff's complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"[A]n agency's denial of a petition for reconsideration is committed to agency discretion and not subject to judicial review unless the request is based on 'new evidence or changed circumstances,' in which case the court evaluates whether 'the refusal to reopen was arbitrary, capricious, [or] an abuse of discretion.'" *Consol. Fibers, Inc. v. United States*, 30 CIT 1820, 1825, 465 F. Supp. 2d 1338, 1343 (2006) (citation omitted) (alteration in original).

## DISCUSSION

### I.   Whether jurisdiction under § 1581(c) could have been available

#### A.   Legal framework

"An inquiry into § 1581(i) jurisdiction is . . . a two-step process." *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1377 (Fed. Cir. 2022).  First, the court considers whether jurisdiction under a subsection other than § 1581(i) was available.  *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citing *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012)).  Second, "if jurisdiction was available under a different subsection of § 1581," the court then examines "whether the remedy provided under that subsection is 'manifestly inadequate.'" *Id.* (citing 28 U.S.C. § 1581(i)).  In determining whether jurisdiction under another subsection is or could have been available, the court must discern the "'true nature' of the action."  *Norsk Hydro Can., Inc. v. United States,* 472 F.3d 1347, 1355 (Fed. Cir. 2006).

28 U.S.C. § 1581(c) grants the court jurisdiction to review antidumping and countervailing duty determinations issued under 19 U.S.C. §§ 1516a and 1517. Moreover, 19 U.S.C. § 1516a(a)(2)(B)(i) lists "[f]inal affirmative determinations by . . . the

Commission" of material injury in antidumping duty investigations as one of the reviewable determinations under 28 U.S.C. § 1581(c).  *See also* 19 U.S.C. § 1673d(b)(1).

### B.    Analysis

#### 1.    The true nature of plaintiff's action

The court examines first whether jurisdiction could have been available under another subsection of § 1581.

Defendant-intervenors argue that jurisdiction is unavailable under § 1581(i) because the true nature of plaintiff's action is a challenge to the Commission's negligibility analysis, which, according to defendant-intervenors, plaintiff was required to challenge within 30 days of the Commission's determination under § 1581(c).  Def.-Intervenors Br. at 19, 23.

Plaintiff asserts in response that the true nature of its action is in fact a challenge to the Commission's denial of plaintiff's request to institute reconsideration proceedings. Pl. Br. at 9.  According to plaintiff, it "could not have raised . . . a claim appealing the final injury determination."  *Id.* at 10.  Plaintiff argues on this basis that jurisdiction is proper under § 1581(i) because a challenge to the Commission's decision not to initiate reconsideration proceedings is not listed as an appealable decision under any other subsection of § 1581.  *Id.*

The court concludes that the true nature of the instant action is a challenge to the Commission's negligibility analysis in the original investigation because the source of the alleged harm to plaintiff is the Commission's finding of non-negligibility in that investigation.

The court looks to the "true nature of the action" to determine whether jurisdiction is or could have been available under another subsection of § 1581. *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016). "The true nature of a particular action will depend upon the attendant facts asserted in the pleadings." *Id.* (citing *Norsk Hydro*, 472 F.3d at 1355). Therefore, "'[d]etermining the true nature of an action under § 1581' requires that [the court] 'discern the particular agency action that is the source of the alleged harm so that [the court] may identify which subsection of § 1581 provides the appropriate vehicle for judicial review.'" *ARP Materials,* 47 F.4th at 1378 (citing *Hutchison*, 827 F.3d at 1360).

Here, plaintiff's complaint demonstrates that the source of the alleged harm to plaintiff lies in the Commission's negligibility analysis. For example, the complaint alleges that the harm suffered by plaintiff is redressable if the Commission "correct[ed] errors in the AD negligibility determination in the original investigation." Am. Compl. ¶ 38. The complaint alleges further: "[B]ut for Commerce's initial unlawful decisions, the volume of subject imports considered by the Commission would have been below the negligibility threshold for the AD injury investigation, just as they had been for the CVD investigation: there would be no AD order on hot-rolled steel flat products from Turkey." *Id.* ¶ 19. In the only count of the amended complaint, plaintiff alleges also that the Commission "has the authority to reconsider and correct errors in the AD negligibility determination *in the original investigation*." *Id.* ¶ 38 (emphasis supplied).

Therefore, the source of plaintiff's harm is not the Commission's decision not to reconsider its negligibility analysis, but the Commission's initial finding of non-negligibility in the original investigation. The court notes that plaintiff asserts in its

complaint that plaintiff is challenging the Commission's denial of plaintiff's request for a reconsideration proceeding. *Id.* ¶ 1. However, "mere recitation of a basis for jurisdiction [is not] controlling." *ARP Materials*, 47 F.4th at 1378 (quoting *Harford Fire Ins. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008)). Moreover, the Federal Circuit has instructed that "a party may not expand a court's jurisdiction by creative pleading." *Norsk Hydro*, 472 F.3d at 1378. Section 1581(i) "[was not] meant to supersede more specific jurisdictional provisions." *Koyo Seiko Co. v. United States*, 13 CIT 461, 463, 715 F. Supp. 1097, 1099 (1989). This Court's comments on this point in *San Vicente Camalu SPR De Ri v. United States*, 29 CIT 436, 444, 336 F. Supp. 2d 1373, 1380 n.19 (2005), are instructive:

> [Plaintiff] cannot invoke (i) jurisdiction . . . simply by requesting that the agencies retract or reconsider their determinations. Section 1581(i) was never intended to create new causes of action. H.R. Rep. No. 96-1235, at 47 (1980). Nor was it intended to supersede more specific jurisdictional provisions. . . . [Plaintiff] cannot make an "end run" around § 1581(c) and secure (i) jurisdiction simply by using the procedural mechanism of a request to reopen.

(internal citation omitted).

Because the agency action that is the source of the alleged harm is the Commission's inclusion of Colakoglu in the Commission's computation of total imports from Turkey, which resulted in a finding of non-negligibility, the "true nature" of plaintiff's action is a challenge to the Commission's affirmative final determination of material injury in the original investigation.

### 2.   Whether jurisdiction is or could have been available under § 1581(c)

The court considers next whether jurisdiction could have been available under § 1581(c).

Plaintiff argues that jurisdiction under § 1581(c) could not have been available because "[plaintiff] could not have raised such a claim in the final injury determination." Pl. Br. at 10.  According to plaintiff, any challenge to the Commission's final determination would have been speculative, as it would have depended by necessity on the success of plaintiff's then pending challenge to the final dumping margin of Commerce.  *Id.* at 13.  Plaintiff argues that, as a result, plaintiff would not have had standing to challenge the Commission's determination.  *Id.*

Defendant-intervenors respond that plaintiff, as an interested party in the original investigation, had the opportunity to commence an action under § 1581(c) "to seek judicial review of the Commission's final material injury determination and any factual findings or legal conclusions upon which that determination was based."  Def.-Intervenors Br. at 18 (citing 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i)).  Defendant-intervenors assert also that plaintiff's challenge to the Commission's determination, had plaintiff filed such a challenge, "could have been stayed pending the outcome of Erdemir [sic] and Colakoglu's appeal of Commerce's final dumping margins."  *Id.*  According to defendant-intervenors, previous cases in which interested parties brought concurrent actions under § 1581(c) to determinations of both Commerce and the Commission establish that plaintiff in the instant action could have challenged also the final material injury determination of the Commission.  *Id.* at 20.

The court concludes that jurisdiction could have been available under § 1581(c) because plaintiff could have challenged the Commission's final material injury determination.

28 U.S.C. § 1581(c) grants the court jurisdiction to review antidumping and countervailing duty determinations issued under 19 U.S.C. §§ 1516a and 1517. Moreover, 19 U.S.C. § 1516a(a)(2)(B)(i) lists "[f]inal affirmative determinations by . . . the Commission" of material injury in AD investigations as one of the reviewable determinations under 28 U.S.C. § 1581(c). *See also* 19 U.S.C. § 1673d(b)(1).

Here, plaintiff could have challenged the Commission's final determination of material injury in the original investigation by filing an appeal within 30 days of the date of publication of the AD order. *See* 19 U.S.C. § 1516a(a)(2)(A)(i)(II); *PAO TMK v. United States*, 47 CIT __, Slip Op. 23-150, 2023 WL 6939242 (CIT Oct. 12, 2023) (exercising jurisdiction under § 1581(c) in a plaintiff's challenge to the Commission's finding of non-negligibility). The court concludes, as a result, that jurisdiction could have been available under § 1581(c).

Plaintiff maintains that its request for reconsideration was made "in light of" Colakoglu's exclusion from the AD order. Pl. Resp. Br. at 7-11. According to plaintiff, because Colakoglu's exclusion from the AD order was not known at the time of the original investigation, jurisdiction under § 1581(c) was not available. *Id.* Plaintiff asserts further that "a challenge to the negligibility decision in the original investigation never existed . . . because it would have to rely upon a speculative result of a separate appeal of a separate administrative action with a separate administrative record." *Id.* at 11.

That Colakoglu's entries were excluded from the AD order pursuant to a recalculation by Commerce upon judicial remand did not render unavailable jurisdiction under § 1581(c) to challenge the Commission's final determination of material injury. Plaintiff acknowledges that, as a plaintiff in the litigation that resulted in Colakoglu's

exclusion from the AD order, plaintiff was aware that had Colakoglu's imports been

excluded, "the volume of subject imports considered by the Commission would have

been below the negligibility threshold for the AD injury investigation, as they had been

for the CVD injury investigation."  Am. Compl. ¶ 19; Pl. Resp. Br. at 11-12.  That the

Commission's decision to include Colakoglu's imports in the Commission's cumulated

import volume became erroneous only after Commerce's retroactive exclusion of

Colakoglu's imports from Commerce's AD order — as opposed to an exclusion ab initio

under a negligibility analysis — does not negate the fact that plaintiff had available to it

a remedy under § 1581(c) that would have preserved plaintiff's rights.  *See* 28 U.S.C. §

1581(c).

       In fact, plaintiff's contention that any challenge to the Commission's final

affirmative determination of material injury would have been "[]frivolous" or "purely

speculative," Pl. Resp. Br. at 11, is contradicted by multiple decisions of this Court.  For

example, in *Diamond Sawblades Mfrs' Coalition v. United States*, 39 CIT __, __, Slip

Op. 15-92, 2015 WL 4978726, at *9 (CIT Aug. 20, 2015), this Court held expressly and

specifically that "the lawfulness of an agency determination may hinge upon the

outcome of separate litigation."  Similarly, in *Encon Indus., Inc. v. United States*, 18 CIT

867, 869 (1994), the Court's decision rebuts directly plaintiff's arguments that it did not

have a nonspeculative claim to challenge the Commission's final affirmative

determination of material injury:

       Encon argues that it could not have brought its claim during the original
       litigation.  Encon alleges that its claim arose only after publication of the
       amended order resulting in the exclusion of one company from the
       antidumping order and consequently elimination of its volume of imports
       from the volumes previously relied upon by the ITC.  Encon argues that
       before that time "there were no facts or evidence in existence that could

have supported this claim."  This of course ignores the fact that parties can and do challenge ITC's actions on the basis of errors in the information furnished to it by Commerce.  It may be that in such cases the ITC litigation must be stayed in order for the plaintiff to have the maximum chance of success, but such stays have been granted.

*Id.* (internal citations omitted); *cf. ARP Materials*, 47 F.4th at 1378-79 (concluding that

the fact that "Customs' classification decisions became erroneous after USTR granted

retroactive exclusions" was irrelevant because "[t]he obligation to protest a Customs

classification error does not turn on whether it was erroneous ab initio or became

erroneous because of retractive administrative action.  It instead turns on whether

Customs' classifications of the importers' entries were protestable 'decisions' under 19

U.S.C. § 1514 . . . .").

        In addition, that jurisdiction "could have been available" to plaintiff under §

1581(c) is demonstrated plainly by previous instances in which interested parties

asserted jurisdiction under § 1581(c) in similar circumstances.  For example, in the 2014

AD investigation of oil country tubular goods, Commerce issued a negative final

dumping determination for Saudi Arabia, *Amended Final Determination and Termination

of the Investigation of Sales at Less Than Fair Value: Certain Oil Country Tubular

Goods from Saudi Arabia*, 79 Fed. Reg. 49,051, 49,052 (Dep't of Commerce Aug. 19,

2014), which resulted in the Commission terminating its investigation of Saudi Arabia.

*See Certain Oil Country Tubular Goods from Saudi Arabia: Termination of Investigation*,

79 Fed. Reg. 51,192 (ITC Aug. 27, 2014).  Commerce's negative final determination

resulted also in a finding that imports from the Philippines and Thailand were negligible.

*Certain Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan, Thailand,

Turkey, Ukraine, and Vietnam*, 79 Fed. Reg. 53,080 (ITC Sept. 5, 2014); *Certain Oil*

*Country Tubular Goods from India, Korea, the Philippines, Saudi Arabia, Taiwan,*

*Thailand, Turkey, Ukraine, & Vietnam*, USITC Pub. No. 4489, Inv. No. 701-TA-499

(Sept. 2014), at 5.  There, domestic producers brought concurrent actions under §

1581(c) to challenge both (1) the determination by Commerce that imports from Saudi

Arabia were not sold at less than fair value and (2) the subsequent finding of negligibility

by the Commission.  Domestic producers then moved for a stay in the action against the

Commission pending resolution of the action against Commerce.  *Boomerang Tube LLC*

*v. United States*, Court No. 14-00196, ECF No. 6 (stating in plaintiff's complaint that

plaintiffs were challenging Commerce's amended final negative determination in the AD

investigation of oil country tubular goods from Saudi Arabia); *United States Steel Corp.*

*v. United States*, Consol. Ct. No. 14-00232, ECF Nos. 2 (stating in their complaint that

plaintiffs were challenging the Commission's termination of the AD investigation), 25

(consent motion for stay) and 26 (order granting consent motion for stay pending "final

resolution of the appeal in *Boomerang Tube LLC v. United States*, Consol. Court No. 14-

196"); *United States Steel. Corp. v. United States*, Consol. Ct. No. 14-00237, ECF Nos.

35 (consent motion for stay) and 36 (order granting consent motion for stay pending

"final resolution of *Boomerang Tube LLC v. United States*").[13]  Other similarly situated

litigants have also availed themselves of the statutorily prescribed remedy under §

---

[13] Ultimately, domestic producers were not successful in their challenge to Commerce's
final determination.  *Boomerang Tube LLC v. United States*, 39 CIT__, 125 F. Supp. 3d
1357 (2015), *vacated and remanded*, 856 F.3d 908 (Fed. Cir. 2017).  Because, as here,
success in domestic producers' challenge to the Commission's final negative
determination of material injury depended on success in domestic producers' challenge
to Commerce's final determination, domestic producers voluntarily dismissed their
appeal of the Commission's determination.  *United States Steel Corp. v. United* States,
Consol. Ct. No. 14-00232, ECF Nos. 36-37.

1581(c) by requesting — and receiving — a stay of the Commission challenge, even where other interested parties opposed the stay.  *See, e.g.*, *ArcelorMittal USA LLC v. United States*, Consol. Ct. No. 16-00214, ECF No. 43 (requesting reconsideration of court's denial of plaintiff's stay motion because "[t]he Commission's negative injury determinations as to [subject imports] were based entirely on negligibility findings that resulted directly from Commerce's calculation of a de minimis . . . dumping margin" (citations omitted)), ECF No. 52 (motion of defendant-intervenors in opposition to reconsideration and stay), ECF No. 54 (granting plaintiff's motion for reconsideration and staying challenge to the Commission's injury determination).

The path pursued by other litigants in plaintiff's position establishes that plaintiff in the instant case could have asserted jurisdiction under § 1581(c) to challenge the Commission's final affirmative determination of material injury.  A party "may not simply 'elect to proceed under [§] 1581(i), without having first availed himself of the remedy provided by [§] 1581(c).'"  *Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1374 (Fed. Cir. 2021) (quoting *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (citation omitted)).  "[T]he § 1581(i) standard . . . asks only whether another route under § 1581 existed that was not manifestly inadequate."  *Id.*  Here, decisions of this Court and the litigation strategy of interested parties in previous investigations demonstrate that jurisdiction could have been available under § 1581(c).

In sum, the court concludes that jurisdiction could have been available under § 1581(c).

## II.   Whether jurisdiction under § 1581(c) would have been manifestly inadequate

### A.   Legal framework

If jurisdiction could have been available under another subsection of § 1581, the party that seeks to invoke the Court's jurisdiction "bears the burden of demonstrating manifest inadequacy."  *Intercontinental Chems., LLC v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1232, 1241 (2020) (citing *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987)); *Erwin Hymer Grp. N. Am.*, 930 F.3d at 1375.

"[T]o be manifestly inadequate, the protest must be an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain."  *ARP Materials*, 47 F.4th at 1379 (alterations in original) (quoting *Sunpreme*, 892 F.3d at 1193-94).

### B.   Analysis

The court considers next whether the remedy available to plaintiff under § 1581(c) would have been manifestly inadequate.

Defendant-intervenors contend that plaintiff cannot establish that relief under § 1581(c) would have been manifestly inadequate, citing the case of oil country tubular goods.  Def.-Intervenors Br. at 20-21.  In response to plaintiff's contention that any challenge under § 1581(c) to the Commission's final determination would have failed as "purely speculative," defendant-intervenors note that, as plaintiff concedes, "the termination of the Commission's countervailing duty investigation on negligibility grounds made it clear how a decision favorable to the Turkish respondents in the parallel appeal of Commerce's final dumping margins . . . would have affected the Commission's antidumping duty investigation."  Def.-Intervenors Reply Br. at 11.

Defendant-intervenors argue also that the fact that a stay would have been required for any challenge to the Commission's final affirmative determination to be successful does not, in itself, render such a challenge manifestly inadequate.  *Id.* at 12.

Plaintiff argues that relief under § 1581(c) — even had it been available — would have been manifestly inadequate because, according to plaintiff, any challenge under § 1581(c) to the Commission's final determination would have failed.  Pl. Br. at 14. Plaintiff asserts that such a challenge — filed by necessity prior to Colakoglu's exclusion from the AD order — would have been based on "purely speculative" grounds.  *Id.* at 11. Plaintiff adds that, even if a challenge under § 1581(c) would not have been dismissed as speculative, the court would not have granted a stay pending the resolution of the parallel case challenging Commerce's final determination.  *Id.* at 14-17.

The court concludes that plaintiff has failed to establish that relief under § 1581(c) would have been manifestly inadequate.  "[T]o be manifestly inadequate," the remedy (in this case) under § 1581(c) "must be an 'exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'"  *Sunpreme,* 892 F.3d at 1193-94 (quoting *Hartford Fire Ins. Co v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008) (emphasis omitted)).

To start, whether to stay a case lies "'within the sound discretion of the trial court.'"  *RHI Refractories Liaoning Co. v. United States*, 35 CIT 407, 410, 774 F. Supp. 2d 1280, 1284 (2011) (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)).  Given that the decision to stay a case is within the court's "sound discretion," *id.*, plaintiff's definitive assertion that a stay "would not have been

granted" — and that therefore relief under § 1581(c) was manifestly inadequate, Pl. Br. at 14 — is unsupported.

In addition, plaintiff's attempt to establish that relief under § 1581(c) would have been manifestly inadequate is further undermined by cases in which parties in plaintiff's position sought and received a stay pending the result of a challenge to Commerce's final determination.  "Persuasive of the adequacy of the § 1581(c) remedy is that another [party] . . . used it."  *Miller & Co,* 824 F.2d at 963.  Domestic producers in oil country tubular goods followed the path prescribed by statute by filing concurrent actions under § 1581(c) to challenge the determinations of both Commerce and the Commission.  *Boomerang Tube LLC v. United States*, Court No. 14-00196, ECF No. 6 (stating in plaintiff's complaint that plaintiffs were challenging Commerce's amended final negative determination in the AD investigation of oil tubular goods from Saudi Arabia); *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF Nos. 2 (stating in their complaint that plaintiffs were challenging the Commission's termination of the AD investigation).  There, domestic producers filed a consent motion to stay the challenge to the Commission determination pending the result of domestic producers' challenge to the Commerce determination.  *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF Nos. 25 (consent motion to stay) and 26 (order granting consent motion to stay pending "final resolution of the appeal in *Boomerang Tube LLC v. United States*, Consol. Ct. No. 14-196"); *see also ArcelorMittal USA LLC v. United States*, Consol. Ct. No. 16-00214, ECF No. 54 (granting contested motion to stay pending result of challenge to Commerce determination).  "[T]he use of 'the § 1581(c) remedy' by other litigants in plaintiff's position is persuasive of its

adequacy." *Royal United Corp. v. United States*, 34 CIT 756, 766, 714 F. Supp. 2d

1307, 1317 (2010) (quoting *Miller & Co.*, 824 F.2d at 964).  As a consequence, plaintiff

cannot demonstrate that relief under § 1581(c) would have been manifestly inadequate.

Plaintiff maintains that *United States Steel Corp.* is inapposite because the

motion to stay in that case was filed with the consent of all parties.  Pl. Br. at 15-16

(citing *United States Steel Corp. v. United States*, Consol. Ct. No. 14-00232, ECF No.

25 (consent motion to stay)).  In the instant case, plaintiff envisions that defendant-

intervenors would have opposed any stay, and that the court would have been required

to deny any motion to stay after weighing parties' competing interests.  *Id.* at 14.

Plaintiff maintains also that relief under § 1581(c) would have been manifestly

inadequate because "contested motions for stay been [sic] rejected by the Court of

International Trade."  *Id.* at 16-17 (citing *LG Elecs., Inc. v. U.S. Int'l Trade Comm'n* (*LG

Elecs. II*), 38 CIT 103 (2014)); *see also LG Elecs., Inc. v. U.S. Int'l Trade Comm'n* (*LG

Elecs. I*), 37 CIT 1589, 1589-90 (2013).

However, that domestic producers *may* have opposed a stay, or that the court

*may* have denied any request for a stay, does not render relief under § 1581(c)

manifestly inadequate.  "[A] remedy is not inadequate simply because a party believes

such remedy is unavailable."  *Rimco Inc. v. United States*, 98 F.4th 1046, 1054 (Fed.

Cir. 2024) (citing *Hartford Fire*, 544 F.3d at 1294).  For relief under § 1581(c) to be

manifestly inadequate, plaintiff is required to show that relief under § 1581(c) would

have been "an exercise in futility, or 'incapable of producing any result; failing utterly of

the desire end through intrinsic defect; useless, ineffectual, vain.'"  *Id.*  The mere

possibility that the court may have denied a stay in a challenge to the Commission's

final material injury determination does not render relief under § 1581(c) manifestly

inadequate.  *Cf. Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1328 (Fed.

Cir. 2006) ("Plaintiff cannot take it upon itself to determine whether it would be futile to

protest or not." (quoting *Inner Secrets/Secretly Yours v. United States*, 18 CIT 1028,

1036, 869 F. Supp. 959, 966 (1994))).

And, in any event, this Court has granted contested motions to stay in

circumstances similar to those in the instant case.  *See DuPont Teijin Films v. United

States*, 39 CIT __, Slip Op. 15-95, 2015 WL 5024950 (CIT Aug. 26, 2015); *ArcelorMittal

USA LLC v. United States*, Consol. Ct. No. 16-00214, ECF No. 54.

In *Teijin Films*, Commerce issued a scope ruling that concluded that defendant-

intervenors' product was outside the scope of the AD order.  39 CIT at __, 2015 WL

5024950, at *1.  Domestic producers of the subject merchandise appealed Commerce's

determination to this Court.  *Id.*  Then, the Commission instituted the first sunset review

of the subject merchandise.  *Id.* at *2.  In their response to the Commission's notice of

institution of the sunset review, defendant-intervenors directed the Commission's

attention to Commerce's scope ruling concluding that defendant-intervenors' product

was not within the scope of the AD order.  *Id.*  In its material injury analysis, the

Commission noted that "imports from Brazil would focus on out-of-scope merchandise"

and concluded that "revocation of the antidumping duty order on subject imports from

Brazil would not likely lead to a significant adverse impact on the domestic industry."  *Id.*

Domestic producers challenged the Commission's determination and moved to

stay those proceedings pending the outcome of parallel litigation contesting

Commerce's scope ruling.  *Id.* at *3.  Defendant-intervenors opposed the stay, largely

for the same reasons that plaintiff surmises that defendant-intervenors would have opposed any stay in the instant case: "the complexity of trade cases renders them 'not conducive to quick judicial review,' [which] counsels against granting a stay." *Id.* at *4. However, the Court granted the stay because "the validity of the Scope Ruling is central to [plaintiff's] claims." *Id.* at *5. Specifically, the Court reasoned that "the ITC's reliance on the Scope Ruling, which underpinned its decision not to cumulate Brazilian subject imports, ultimately led to a negative injury determination." *Id.* The Court concluded, therefore, that granting the stay "pending the conclusion" of the parallel case "would best conserve the resources of the court and parties, as well as preclude the issuance of conflicting judgments." *Id.* (citations omitted). In light of this Court's decision in *Teijin Films*, plaintiff cannot establish that this Court uniformly denies contested motions to stay challenges to a Commission determination pending the outcome of a separate appeal of a Commerce decision, such that any challenge under § 1581(c) would have been "an exercise in futility, useless or incapable of producing the result it seeks," *Sunpreme*, 892 F.3d at 1194.

Finally, *LG Electronics*, the case on which plaintiff relies, is inapposite. In *LG Electronics*, plaintiffs challenged both (1) Commerce's antidumping and countervailing duty determinations and (2) the Commission's final determinations of material injury. *LG Elecs. I*, 37 CIT at 1589-90. Plaintiffs sought a stay of proceedings challenging the Commission's determination pending final resolution of the Commerce cases. *Id.* The Court denied plaintiffs' motion to stay because plaintiffs "fail[ed] to show a clear non-speculative nexus between the possible outcome in the related Commerce Department Cases and [the case before the court]." *Id.* at 1593. The Court observed that, for

plaintiff to succeed, it "would need to be successful in its appeal so that the court would remand and instruct Commerce to recalculate the margins." *Id.* at 1592. The Court observed also that the *effect* of plaintiffs' successful appeal in the Commerce cases on the Commission's *impact* analysis was also speculative. *Id.* at 1592-93 (internal citations omitted) (emphasis supplied) (citing *GPX Int'l. Tire Corp. v. United States*, 37 CIT 19, 30, 893 F. Supp. 2d 1296, 1310 n.15 (2013) (noting "that the dumping margin is only one of several factors that the ITC considers in evaluating injury, and the ITC has not developed standard methodology for weighing the impact of the Commerce-calculated dumping margin, making this argument largely speculative")); *see also LG Elecs. II*, 38 CIT at 104 ("[A]s explained in this court's prior order, Plaintiffs' claim is still speculative.").

The instant action stands in sharp contrast. Plaintiff's action concerns the impact of the successful appeal of Commerce's determination on the Commission's *negligibility* analysis. Am. Compl. ¶ 38. Plaintiff acknowledges that the negligibility analysis in the CVD investigation — which excluded Colakoglu's imports and therefore found imports from Turkey negligible — rendered the impact of a successful appeal of Commerce's AD determination on a challenge under § 1581(c) to the Commission's determination indisputable: the volume of dumped merchandise from Turkey would also have been negligible. Am. Compl. at 1-2. That is, in the instant case it would have been clear to the reviewing court that a successful challenge to Commerce's determination would result in imports of the subject merchandise from Turkey falling below the negligibility threshold. As a result, the basis for the Court's denial of plaintiffs' request to stay in *LG Electronics* is inapposite to the instant case.

Accordingly, plaintiff has failed to establish that relief under § 1581(c) would have been manifestly inadequate.

As noted, an adequate remedy was available to Ereğli Demir ve Çelik Fabrikaları T.A.Ş. to challenge the final determination of the Commission.  Plaintiff did not avail itself of that remedy.  Now, plaintiff would have the court act to expand the scope of the court's residual jurisdiction to fashion a remedy that the law does not provide.  The court declines, as it must, to do so.

## CONCLUSION

For the reasons discussed above, the court grants defendant-intervenors' motion to dismiss for lack of subject matter jurisdiction.  Judgment will enter accordingly.


                                            /s/      Timothy M. Reif
                                            Timothy M. Reif, Judge

Dated:          July 22, 2024
        New York, New York

# TAB 3:

*Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73331 (Int'l Trade Comm'n Nov. 29, 2022)

by accessing its internet server at *https://www.usitc.gov.*

**FOR FURTHER INFORMATION CONTACT:**
Pathenia M. Proctor, The Office of Unfair Import Investigations, (202) 205–2560.

**SUPPLEMENTARY INFORMATION:**

*Authority:* The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2022).

*Scope of Investigation:* Having considered the complaint, the U.S. International Trade Commission, on November 22, 2022, *ordered that—*

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain products identified in paragraph (2) by reason of infringement of one or more of claims 1–6 and 11–13 of the '760 patent, and whether an industry in the United States exists as required by subsection (a)(2) of section 337;

(2) Pursuant to section 210.10(b)(1) of the Commission's Rules of Practice and Procedure, 19 CFR 210.10(b)(1), the plain language description of the accused products or category of accused products, which defines the scope of the investigation, is "semiconductor devices, and specifically undiced wafers, diced wafers, packaged chips and chipsets both attached and unattached to printed circuit boards; and end products incorporating such articles, specifically amplifiers, LIDAR sensor systems, automotive control modules, WiFi routers, and cameras";

(3) Pursuant to Commission Rule 210.50(b)(l), 19 CFR 210.50(b)(1), the presiding administrative law judge shall take evidence or other information and hear arguments from the parties or other interested persons with respect to the public interest in this investigation, as appropriate, and provide the Commission with findings of fact and a recommended determination on this issue, which shall be limited to the statutory public interest factors set forth in 19 U.S.C. 1337(d)(l), (f)(1), (g)(1);

(4) For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a) The complainant is:

Bell Semiconductor, LLC, One West Broad Street, Suite 901, Bethlehem, PA 18018

(b) The respondents are the following entities alleged to be in violation of section 337, and are the parties upon which the complaint is to be served:

Analog Devices Inc., 1 Technology Way, Norwood, MA 02062
Bose Corporation, 100 The Mountain Road, Framingham, MA 01701
Marvell Technology Group, Ltd., Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda
Marvell Semiconductor, Inc., 5488 Marvell Lane, Santa Clara, CA 95054
Suteng Innovation Technology Co., Ltd., d/b/a RoboSense, RoboSense Building, Block 1, South of Zhongguan Hongjualing Industrial District, No. 1213 Liuxian Avenue, Taoyuan Street, Nanshan District, Shenzen 518023, China
Kioxia Corporation, 3–1–21, Shibaura, Minato-ku, Tokyo 108–0023, Japan
Kioxia America, Inc., 2610 Orchard Pkwy., San Jose, CA 95134
MaxLinear, Inc., 5966 La Place Court, Suite 100, Carlsbad, CA 92008
Linksys USA, Inc., 121 Theory Drive, Irvine, CA 92617
MACOM Technology Solutions, Inc., 100 Chelmsford Street, Lowell, MA 01851
Silicon Laboratories, Inc., 400 West Cesar Chavez, Austin, TX 78701
DENSO Corporation, 1 Chome-1 Showacho, Kariya, Aichi 448–0029, Japan
Skyworks Solutions, Inc., 5260 California Avenue, Irvine, CA 02617
OmniVision Technologies, Inc., 4275 Burton Drive, Santa Clara, CA 95054
Arlo Technologies, Inc., 480 N McCarthy Blvd., Suite 200, Milpitas, CA 95035

(c) The Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street SW, Suite 401, Washington, DC 20436: and

(5) For the investigation so instituted, the Chief Administrative Law Judge, U.S. International Trade Commission, shall designate the presiding Administrative Law Judge.

Responses to the complaint and the notice of investigation must be submitted by the named respondents in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 CFR 210.13. Pursuant to 19 CFR 201.16(e) and 210.13(a), as amended in 85 FR 15798 (March 19, 2020), such responses will be considered by the Commission if received not later than 20 days after the date of service by the complainant of the complaint and the notice of investigation. Extensions of time for submitting responses to the complaint and the notice of investigation will not be granted unless good cause therefor is shown.

Failure of a respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of an exclusion order or a cease and desist order or both directed against the respondent.

By order of the Commission.

Issued: November 23, 2022.

**Jessica Mullan,**
*Acting Supervisory Attorney.*

[FR Doc. 2022–26055 Filed 11–28–22; 8:45 am]

**BILLING CODE 7020–02–P**

## INTERNATIONAL TRADE COMMISSION

[Investigation No. 731–TA–1296 (Final)]

**Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey**

**AGENCY:** United States International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** The Commission hereby gives notice that it has declined to institute a review pursuant to section 751(b) of the Tariff Act of 1930 (the Act) or grant reconsideration regarding the Commission's affirmative determination in investigation No. 731–TA–1296 (Final).

**DATES:** *Applicable:* November 22, 2022.

**FOR FURTHER INFORMATION CONTACT:**
Douglas Corkran (202–205–3057), Office of Investigations, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436. Hearing-impaired persons can obtain information on this matter by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special

assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its internet server (*http://www.usitc.gov*). The public record for this matter may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.*

**SUPPLEMENTARY INFORMATION:**

*Background.*—In September 2016, the Commission determined that a U.S. industry was materially injured by reason of imports of hot-rolled steel flat products from Turkey found by the U.S. Department of Commerce (Commerce) to be sold in the United States at less than fair value (81 FR 66996, Sept. 29, 2016). Turkish producer and exporter Eregli Demir ve Celik Fabrikalari T.A.S. (Erdemir) did not appeal the Commission's final affirmative material injury determination in the antidumping duty investigation with respect to Turkey.

On September 1, 2021, Commerce initiated, and the ITC instituted, five-year reviews of the antidumping duty order on hot-rolled steel flat products from Turkey (86 FR 48983 & 86 FR 49057, Sept. 1, 2021). On December 6, 2021, the Commission determined to conduct a full five-year review of the order (87 FR 3123, Jan. 20, 2022).

On September 10, 2021, the Commission received a request from Erdemir to review its affirmative determination in investigation No. 731–TA–1296 (Final) pursuant to section 751(b) of the Act (19 U.S.C. 1675(b)). The request alleged there have been significant changed circumstances since the issuance of the Commission's 2016 determination. Specifically, Erdemir alleged that Commerce's recalculation of Colakoglu Dis Ticaret A.S.'s (Colakoglu) antidumping duty margin to zero percent and Colakoglu's consequent exclusion from the antidumping duty order as a result of judicial review constitute significantly changed circumstances from those in existence at the time of the original investigation. According to Erdemir, the exclusion of Colakoglu from the antidumping duty order places this case *in pari materia* with the Commission's finding of negligibility in the countervailing duty investigation and provides a compelling basis to now find that imports from Turkey were negligible in the original antidumping duty investigation.

On December 2, 2021, the Commission published a **Federal Register** notice inviting comments from the public on whether changed circumstances exist sufficient to warrant the institution of a changed circumstances review (86 FR 68512, Dec. 2, 2021). In response to its **Federal Register** notice soliciting comments, the Commission received a submission opposing the institution of a changed circumstances review jointly filed on behalf of Cleveland-Cliffs Inc., Nucor Corporation, SSAB Enterprises, LLC, Steel Dynamics, Inc., and United States Steel Corporation. The Commission also received separate submissions in favor of instituting a changed circumstances review on behalf of the government of the Republic of Turkey and Erdemir.

The Commission has determined not to institute a changed circumstances review of the antidumping duty order on hot-rolled steel flat products from Turkey. At the time Erdemir filed its request for a changed circumstance review, the Commission was already conducting a five-year review of the antidumping duty order on hot-rolled steel flat products from Turkey. Conducting a changed circumstances review at the same time as a five-year review would be unwarranted because it would be duplicative of the full five-year review. *See Eveready Battery Co. Inc.* v. *United States,* 77 F. Supp.2d 1327 (CIT 1999) (finding that a request for a changed circumstances review was rendered moot by the Commission's institution of a full five-year review). Moreover, the result that Erdemir seeks—reexamination of the Commission's original negligibility finding—is not possible in a changed circumstances review because negligibility is not a factor for the Commission to consider under the statute in a changed circumstances review. A changed circumstances review involves a forward-looking inquiry that considers whether in view of changed circumstances an order is no longer needed to prevent the continuation or recurrence of material injury; it does not provide an opportunity for the Commission to reconsider and amend its original injury determination. *Compare* 19 U.S.C. 1675a(a) *with* 19 U.S.C. 1673d(b)(1) & 1677(24).

While not included in its request for a changed circumstances review, Erdemir raised in its comments regarding the changed circumstances request that the Commission consider the alternative of conducting a reconsideration proceeding. After considering this alternative request, the Commission has determined not to exercise its authority to undertake a reconsideration of its negligibility analysis in its original material injury determination with respect to the antidumping duty investigation of imports of hot-rolled steel flat products from Turkey.

In view of the presumption of finality and correctness that underlies past action by the Commission, the Commission has chosen to exercise its authority to reconsider only when "extraordinary circumstances" are present. For example, the Commission reconsidered its determination in *Ferrosilicon* "when a fraud has been perpetrated on the tribunal in its initial proceeding." *Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela,* Inv. Nos. 731–TA–566–570, 641 and 303–TA–23 (Reconsideration), USITC Pub. 3218 (Aug. 1999) ("*Ferrosilicon Reconsideration*"), *aff'd Elkem Metals Co.* v. *United States,* 193 F.Supp.2d 1314 (CIT 2002). In *Ferrosilicon Reconsideration,* the Commission concluded that the "type of extraordinary circumstances that . . . would warrant reconsideration of a Commission determination—matters that strike at the heart of the integrity of the administrative process" were present because "[d]omestic producers were criminally convicted of an offense concerning an issue—the establishment of prices for ferrosilicon—that was a focal point of the original Commission investigations." *Ferrosilicon Reconsideration* at 8.

Recognizing that the facts presented are unique to each case, and in this case where there is no evidence of fraud or other facts that suggest extraordinary circumstances, we do not find that the recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products from Turkey warrants reconsideration of our determination. We note that our finding is consistent with the Statement of Administrative Action to the Uruguay Round Agreements Act (SAA) and statutory provisions, in which Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis.[1] *See* 19 U.S.C. 1677(35)(C) and

---

[1] Commissioners Kearns and Karpel do not join this sentence. They note that 19 U.S.C. 1677(35)(C) defines the "magnitude of margins of dumping" that the Commission is to consider in its impact analysis in accordance with 19 U.S.C. 1677(7)(C)(iii)(v), and that the section of the SAA referenced above pertains to these provisions. Erdemir, on the other hand, is not asking the Commission to reconsider the "magnitude of margins of dumping" for purposes of its impact analysis pursuant to 19 U.S.C. 1677(7)(C)(iii)(v) and 1677(35)(C), but rather is asking for the Commission to reconsider its negligibility analysis for purposes of 19 U.S.C. 1673d(b)(1) and 19 U.S.C. 1677(24) because the scope of imports subject to Commerce's final affirmative antidumping duty determination

SAA at 851. There was a path for Erdemir to avail itself to preserve its rights to obtain a reexamination of the Commission's original determination in light of the subsequent successful appeal of Commerce's final original determination that resulted in a de minimis dumping margin for Colakoglu and exclusion of imports from Colakoglu from the scope of Commerce's final affirmative antidumping duty determination. The potential impact on Erdemir at the time that Erdemir and Colakoglu appealed Commerce's final antidumping duty determination was known to Erdemir at that time, and in fact, Erdemir joined Colaloglu in appealing Commerce's original determination. Erdemir did not appeal the Commission's final affirmative material injury determination which would have provided it with the opportunity to preserve its rights for further reconsideration of the merits based on the outcome of Commerce's appeal. *Accord Borlem S.A. Empreedimentos Industriais* v. *United States,* 913 F.2d 933, 939 (Fed. Cir. 1990); *LG Electronics, Inc.* v. *U.S. International Trade Commission,* Slip Op. 14–8, 2014 WL 260603, at *3 (CIT Jan. 23, 2014). The interests of the finality of the agency's decision are paramount under the circumstances presented and, absent extraordinary circumstances, we decline the request to revisit the final original determination.

*Authority:* This notice is published pursuant to section 207.45 of the Commission's Rules of Practice and Procedure.[2]

By order of the Commission.

Issued: November 23, 2022.

**Jessica Mullan,**

*Acting Supervisory Attorney.*

[FR Doc. 2022–25984 Filed 11–28–22; 8:45 am]

**BILLING CODE 7020–02–P**

---

has changed. Therefore, in their view, it is not clear that 19 U.S.C. 1677(7)(C)(iii)(v) and 1677(35)(C) and the related SAA language address the circumstances presented here.

[2] The Commission has determined the additional analysis needed to consider the alternative reconsideration request was good cause to exercise its authority to waive the institution period pursuant to section 207.45(c) of the Commission's Rules of Practice and Procedure (19 CFR 207.45(c)).

---

# DEPARTMENT OF LABOR

## Agency Information Collection Activities; Submission for OMB Review; Comment Request; High-Voltage Continuous Mining Machine Standards for Underground Coal Mines

**ACTION:** Notice of availability; request for comments.

**SUMMARY:** The Department of Labor (DOL) is submitting this Mine Safety and Health Administration (MSHA)-sponsored information collection request (ICR) to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995 (PRA). Public comments on the ICR are invited.

**DATES:** The OMB will consider all written comments that the agency receives on or before December 29, 2022.

**ADDRESSES:** Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to *www.reginfo.gov/public/do/PRAMain.* Find this particular information collection by selecting "Currently under 30-day Review—Open for Public Comments" or by using the search function.

*Comments are invited on:* (1) whether the collection of information is necessary for the proper performance of the functions of the Department, including whether the information will have practical utility; (2) if the information will be processed and used in a timely manner; (3) the accuracy of the agency's estimates of the burden and cost of the collection of information, including the validity of the methodology and assumptions used; (4) ways to enhance the quality, utility and clarity of the information collection; and (5) ways to minimize the burden of the collection of information on those who are to respond, including the use of automated collection techniques or other forms of information technology.

**FOR FURTHER INFORMATION CONTACT:** Nora Hernandez by telephone at 202–693–8633, or by email at *DOL_PRA_PUBLIC@dol.gov.*

**SUPPLEMENTARY INFORMATION:** This information collection maintains the safe use of high-voltage continuous mining machines (HVCMMs) in underground coal mines by requiring testing, examination and maintenance on machines to reduce fire, electrical shock, ignition and operation hazards. 30 CFR 75.829(b)(1), 75.831, and 75.832(a) through (c) and (g)(1 through (g)(3) contain requirements for examination, maintenance, and recordkeeping on HVCMMs to reduce fire, electrical shock, ignition, and operational hazards. For additional substantive information about this ICR, see the related notice published in the **Federal Register** on August 22, 2022 (87 FR 51448).

This information collection is subject to the PRA. A Federal agency generally cannot conduct or sponsor a collection of information, and the public is generally not required to respond to an information collection, unless the OMB approves it and displays a currently valid OMB Control Number. In addition, notwithstanding any other provisions of law, no person shall generally be subject to penalty for failing to comply with a collection of information that does not display a valid OMB Control Number. *See* 5 CFR 1320.5(a) and 1320.6.

DOL seeks PRA authorization for this information collection for three (3) years. OMB authorization for an ICR cannot be for more than three (3) years without renewal. The DOL notes that information collection requirements submitted to the OMB for existing ICRs receive a month-to-month extension while they undergo review.

*Agency:* DOL–MSHA.

*Title of Collection:* High-Voltage Continuous Mining Machine Standards for Underground Coal Mines.

*OMB Control Number:* 1219–0140.

*Affected Public:* Businesses or other for-profits institutions.

*Total Estimated Number of Respondents:* 3.

*Total Estimated Number of Responses:* 4,092.

*Total Estimated Annual Time Burden:* 192 hours.

*Total Estimated Annual Other Costs Burden:* $0.

(Authority: 44 U.S.C. 3507(a)(1)(D))

**Nora Hernandez,**

*Departmental Clearance Officer.*

[FR Doc. 2022–25977 Filed 11–28–22; 8:45 am]

**BILLING CODE 4510–43–P**

---

# DEPARTMENT OF LABOR

## Occupational Safety and Health Administration

[Docket No. OSHA–2022–0001]

## Advisory Committee on Construction Safety and Health

**AGENCY:** Occupational Safety and Health Administration (OSHA), Labor.

**ACTION:** Request for nominations.

**SUMMARY:** The Secretary of Labor requests nominations for membership

# TAB 4:

*Affirmative Final Determination in Investigation Nos. 701–TA–545–547 and 731–TA–1291–1297 (Final), Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016)



regarding management plans and proposed resource actions on public land in southeast Oregon. This meeting is open to the public in its entirety. Information to be distributed to the Southeast Oregon RAC is requested prior to the start of each meeting.

Before including your address, phone number, email address, or other personal identifying information in your comments, please be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you can ask us in your comment to withhold your personal identifying information from public review, we cannot guarantee that we will be able to do so.

**Donald Gonzalez,**
*Vale District Manager.*
[FR Doc. 2016–23579 Filed 9–28–16; 8:45 am]
**BILLING CODE 4310–33–P**

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

**[LLNM950000 L13400000.BX0000 16XL1109AF]**

### Notice of Filing of Plats of Survey, New Mexico

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice of filing of plats of survey.

**SUMMARY:** The plats of survey described below are scheduled to be officially filed in the New Mexico State Office, Bureau of Land Management, Santa Fe, New Mexico, thirty (30) calendar days from the date of this publication.

**FOR FURTHER INFORMATION CONTACT:** These plats will be available for inspection in the New Mexico State Office, Bureau of Land Management, 301 Dinosaur Trail, Santa Fe, New Mexico. Copies may be obtained from this office upon payment. Contact Carlos Martinez at 505–954–2096, or by email at *cjjmarti@blm.gov,* for assistance. Persons who use a telecommunications device for the deaf (TDD) may call the Federal Information Relay Service (FIRS) at 1–800–877–8339 to contact the above individual during normal business hours.

**SUPPLEMENTARY INFORMATION:**

### New Mexico Principal Meridian, New Mexico (NM)

The Supplemental plat, representing the dependent resurvey in Township 9 South, Range 30 East, of the New Mexico Principal Meridian, accepted June 28, 2016 for Group, 1178, NM.

The plat, representing the dependent resurvey in Township 19 North, Range 11 West, of the New Mexico Principal Meridian, accepted July 20, 2016 for Group, 909, NM. The plat, representing the dependent resurvey in Fractional Township 27 North, Range 21 West, of the New Mexico Principal Meridian, accepted September 21, 2016 for Group, 1172, NM.

The plat representing the dependent resurvey in Township 14 North, Range 17 West, of the New Mexico Principal Meridian, accepted September 21, 2016 for Group, 1175, NM. The plat representing the dependent resurvey in Township 11 North, Range 10 West, of the New Mexico Principal Meridian, accepted September 21, 2016 for Group, 1176, NM. The plat representing the dependent resurvey in Township 11 North, Range 6 East, of the New Mexico Principal Meridian, accepted September 21, 2016 for Group, 1166, NM. These plats are scheduled for official filing 30 days from the notice of publication in the **Federal Register**, as provided for in the BLM Manual Section 2097— Opening Orders. Notice from this office will be provided as to the date of said publication. If a protest against a survey, in accordance with 43 CFR 4.450–2, of the above plats is received prior to the date of official filing, the filing will be stayed pending consideration of the protest.

A plat will not be officially filed until the day after all protests have been dismissed and become final or appeals from the dismissal affirmed.

A person or party who wishes to protest against any of these surveys must file a written protest with the Bureau of Land Management New Mexico State Director stating that they wish to protest.

A statement of reasons for a protest may be filed with the Notice of Protest to the State Director or the statement of reasons must be filed with the State Director within thirty (30) days after the protest is filed.

**Charles I. Doman,**
*Branch Chief, Cadastral Survey.*
[FR Doc. 2016–23524 Filed 9–28–16; 8:45 am]
**BILLING CODE 4310–FB–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Investigation Nos. 701–TA–545–547 and 731–TA–1291–1297 (Final)]**

### Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom

### Determinations

On the basis of the record [1] developed in the subject investigations, the United States International Trade Commission (''Commission'') determines, pursuant to the Tariff Act of 1930 (''the Act''), that an industry in the United States is materially injured by reason of imports of certain hot-rolled steel flat products (''hot-rolled steel'') from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom, provided for in subheadings 7208.10.15, 7208.10.30, 7208.10.60, 7208.25.30, 7208.25.60, 7208.26.00, 7208.27.00, 7208.36.00, 7208.37.00, 7208.38.00, 7208.39.00, 7208.40.60, 7208.53.00, 7208.54.00, 7208.90.00, 7210.70.30, 7210.90.90, 7211.14.00, 7211.19.15, 7211.19.20, 7211.19.30, 7211.19.45, 7211.19.60, 7211.19.75, 7211.90.00, 7212.40.10, 7212.40.50, 7212.50.00, 7214.91.00, 7214.99.00, 7215.90.50, 7225.11.00, 7225.19.00, 7225.30.30, 7225.30.70, 7225.40.70, 7225.99.00, 7226.11.10, 7226.11.90, 7226.19.10, 7226.19.90, 7226.91.50, 7226.91.70, 7226.91.80, 7226.99.01, and 7228.60.60 of the Harmonized Tariff Schedule of the United States, that have been found by the Department of Commerce (''Commerce'') to be sold in the United States at less than fair value (''LTFV''), and that have been found by Commerce to be subsidized by the governments of Brazil and Korea.[2] The Commission further finds that imports of hot-rolled steel that have been found by Commerce to be subsidized by the government of Turkey are negligible. The Commission also finds that imports subject to

---

[1] The record is defined in sec. 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

[2] Chairman Irving A. Williamson, Vice Chairman David S. Johanson, and Commissioners Dean A. Pinkert, Meredith M. Broadbent, and Rhonda K. Schmidtlein voted in the affirmative with respect to imports from Australia, Brazil, Japan, Korea, the Netherlands, and the United Kingdom and with respect to imports sold at less than fair value from Turkey. Commissioner F. Scott Kieff voted in the affirmative with respect to imports from Brazil, Japan, Korea, the Netherlands, and the United Kingdom and with respect to imports sold at less than fair value from Turkey; he voted in the negative with respect to imports from Australia. All six Commissioners found that imports of these products from Turkey that Commerce has determined are subsidized by the government of Turkey are negligible.

Commerce's affirmative critical circumstances determinations are not likely to undermine seriously the remedial effect of the countervailing and antidumping duty orders on hot-rolled steel from Brazil and the antidumping duty order on imports from Japan.

**Background**

The Commission, pursuant to sections 705(b) and 735(b) of the Act (19 U.S.C. 1671d(b) and 19 U.S.C. 1673d(b)), instituted these investigations effective August 11, 2015, following receipt of a petition filed with the Commission and Commerce by AK Steel Corporation (West Chester, Ohio), ArcelorMittal USA, LLC (Chicago, Illinois), Nucor Corporation (Charlotte, North Carolina), SSAB Enterprises, LLC (Lisle, Illinois), Steel Dynamics, Inc. (Fort Wayne, Indiana), and United States Steel Corporation (Pittsburgh, Pennsylvania). The final phase of the investigations was scheduled by the Commission following notification of preliminary determinations by Commerce that imports of hot-rolled steel from Brazil [3] were subsidized within the meaning of section 703(b) of the Act (19 U.S.C. 1671b(b)) and that imports from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom were dumped within the meaning of 733(b) of the Act (19 U.S.C. 1673b(b)). Notice of the scheduling of the final phase of the Commission's investigations and of a public hearing to be held in connection therewith was given by posting copies of the notice in the Office of the Secretary, U.S. International Trade Commission, Washington, DC, and by publishing the notice in the **Federal Register** on April 15, 2016 (81 FR 22310). The hearing was held in Washington, DC, on August 4, 2016, and all persons who requested the opportunity were permitted to appear in person or by counsel.

The Commission made these determinations pursuant to sections 705(b) and 735(b) of the Act (19 U.S.C. 1671d(b) and 19 U.S.C. 1673d(b)). It completed and filed its determinations in these investigations on September 26, 2016. The views of the Commission are contained in USITC Publication 4638 (September 2016), entitled *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*

---

[3] The Commission also scheduled final-phase countervailing duty investigations concerning hot-rolled steel from Korea and Turkey, although Commerce preliminarily determined that *de minimis* countervailable subsidies were being provided to hot-rolled steel producers and exporters from Korea and Turkey.

*(Investigation Nos. 701–TA–545–547 and 731–TA–1291–1297 (Final)).*

By order of the Commission.
Issued: September 26, 2016.

**Katherine Hiner,**
*Acting Supervisory Attorney.*
[FR Doc. 2016–23572 Filed 9–28–16; 8:45 am]
**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**[Investigation No. 337–TA–965]**

**Certain Table Saws Incorporating Active Injury Mitigation Technology and Components Thereof; Notice of Request for Statements on the Public Interest**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the presiding administrative law judge ("ALJ") has issued a recommended determination on remedy and bonding in the above-captioned investigation. The Commission is soliciting comments on public interest issues raised by the recommended relief, specifically limited exclusion orders and cease and desist orders, against certain table saws incorporating active injury mitigation and components thereof, imported by respondents Robert Bosch Tool Corporation of Mount Prospect, Illinois, and Robert Bosch GmbH of Baden-Wuerttemberg, Germany. Parties are to file public interest submissions pursuant to Commission regulations.

**FOR FURTHER INFORMATION CONTACT:** Robert Needham, Office of the General Counsel, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, telephone (202) 708–5468. The public version of the complaint can be accessed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov,* and will be available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, telephone (202) 205–2000.

General information concerning the Commission may also be obtained by accessing its Internet server (*https://www.usitc.gov*). The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov.* Hearing-impaired persons are advised that information on this matter can be obtained by contacting the

Commission's TDD terminal on (202) 205–1810.

**SUPPLEMENTARY INFORMATION:** Section 337 of the Tariff Act of 1930 provides that if the Commission finds a violation it shall exclude the articles concerned from the United States:

unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry.

19 U.S.C. 1337(d)(1). A similar provision applies to cease-and-desist orders. 19 U.S.C. 1337(f)(1).

The Commission is interested in further development of the record on the public interest in these investigations. Accordingly, members of the public are invited to file, pursuant to 19 CFR 210.50(a)(4), submissions of no more than five (5) pages, inclusive of attachments, concerning the public interest in light of the administrative law judge's recommended determination on remedy and bonding issued in this investigation on September 20, 2016. Comments should address whether issuance of limited exclusion orders and cease and desist orders in this investigation would affect the public health and welfare in the United States, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, or United States consumers.

In particular, the Commission is interested in comments that:

(i) explain how the articles potentially subject to the recommended limited exclusion orders and cease and desist orders are used in the United States;

(ii) identify any public health, safety, or welfare concerns in the United States relating to the recommended limited exclusion orders and cease and desist orders;

(iii) identify like or directly competitive articles that complainant, its licensees, or third parties make in the United States which could replace the subject articles if they were to be excluded;

(iv) indicate whether complainant, complainant's licensees, and/or third party suppliers have the capacity to replace the volume of articles potentially subject to the recommended limited exclusion orders and cease and desist orders within a commercially reasonable time; and

(v) explain how the recommended limited exclusion orders and cease and desist orders would impact consumers in the United States.

Written submissions must be filed no later than by close of business on October 18, 2016.

Persons filing written submissions must file the original document

---

Appx0040