2024-2243

# United States Court of Appeals
# for the Federal Circuit

EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant,*

v.

UNITED STATES INTERNATIONAL TRADE
COMMISSION, STEEL DYNAMICS, INC., SSAB
ENTERPRISES LLC, CLEVELAND-CLIFFS INC., NUCOR
CORPORATION,

*Defendants-Appellees.*

Appeal from the United States Court of International Trade,
Case No. 1:22-cv-00349-TMR, Hon. Judge Timothy M. Reif

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

CHRISTINE M. STREATFEILD
JUSTIN R. BECKER
BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiff-Appellant*

April 4, 2025

# TABLE OF CONTENTS

*Page*

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................4

I.  THE CIT HAD JURISDICTION UNDER SECTION 1581(i)
    OVER ERDEMIR'S ACTION ...........................................................................4

    A. Jurisdiction Under 1581(c) Was Not Available for Erdemir's
       Action..................................................................................................5

    B. Even If Section 1581(c) Did Confer Jurisdiction Over Erdemir's
       Claim, the Available Remedy Would Have Been Manifestly
       Inadequate .............................................................................................9

II. ERDEMIR STATED A CLAIM FOR WHICH RELIEF COULD
    BE GRANTED ...............................................................................................19

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Administrative Determinations**

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey:
    Final Affirmative Determination of Sales at Less Than Fair Value*,
    81 Fed. Reg. 53428 (Dep't of Commerce Aug. 12, 2016) ..................................12

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan,
    Korea, the Netherlands, Turkey, and the United Kingdom*,
    Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final), USITC
    Pub. 4638 (Sept. 2016) ......................................................................................12

*Hot-Rolled Steel Flat Products From Turkey; Denial of Request To
    Institute a Section 751(b) Review; Denial of Request To Institute a
    Section 751(b) Review or Reconsideration Proceeding Concerning
    the Commission's Affirmative Determination in
    Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat
    Products From Turkey*, 87 Fed. Reg. 73331 (Int'l Trade Comm'n
    Nov. 29, 2022) ...................................................................................................22

**Cases**

*American Alliance for Hardwood Plywood v. United States*,
    392 F. Supp. 3d 1298 (Ct. Int'l Trade 2019) .......................................................8

*ArcelorMittal USA LLC v. United States*,
    Consol. Case No. 16-cv-00214 (Ct. Int'l Trade) ...............................................15

*Boomerang Tube LLC v. United States*,
    856 F.3d 908 (Fed. Cir. 2017) .....................................................................10, 14

*Boomerang Tube LLC v. United States*,
    Case No. 14-cv-00196 (Ct. Int'l Trade) .............................................................14

*Budd Co., Wheel & Brake Div. v. United States*,
    773 F. Supp. 1549 (Ct. Int'l Trade 1991) ...........................................................10

*Clapper v. Amnesty Intern. USA*,
    568 U.S. 398 (2013) .............................................................................10, 11, 16

*Corus Staal BV v. United States*,
502 F.3d 1370 (Fed. Cir. 2007) ............................................................10

*DuPont Teijin Films v. United States*,
2015 WL 5024950 (Ct. Int'l Trade 2015) ............................................15

*Encon Indus., Inc. v. United States*,
18 CIT 867 (1994) ....................................................................16, 19, 20

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*,
Case No. 22-cv-00349 (Ct. Int'l Trade 2023) ....................................6, 7

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*,
Case No. 24-2242 (Fed. Cir. 2024) .........................................................1

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*,
Case No. 24-2249 (Fed. Cir. 2024) .........................................................1

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018) ........................................13

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020) ........................................13

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
Case No. 16-cv-00217 (Ct. Int'l Trade 2016) ................................17, 18

*Ereğli Demir ve Çelik Fabrikaları T.A.S. v. United States Int'l Trade Comm'n*,
723 F. Supp. 3d 1354 (Ct. Int'l Trade 2024) ....................................9, 14

*Ford Motor Co. v. United States*,
688 F.3d 1319 (Fed. Cir. 2012) ..............................................................4

*Hartford Fire Ins. Co. v. United States*,
544 F.3d 1289 (Fed. Cir. 2008) ..............................................................9

*Hercules, Inc. v. United States*,
673 F. Supp. 454 (Ct. Int'l Trade 1987) ...............................................10

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ...............................................................................10

*Home Prods. Int'l, Inc. v. United States*,
633 F.3d 1369 (Fed. Cir. 2011) ............................................................8

*Hutchison Quality Furniture, Inc. v. United States*,
827 F.3d 1355 (Fed. Cir. 2016) ............................................................6

*Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*,
482 U.S. 270 (1987)..............................................................................8

*LG Electronics, Inc. v. United States Int'l Trade Comm'n*,
2014 WL 260603 (Ct. Int'l Trade 2014) ..............................................21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................10

*Miller & Co. v. United States*,
824 F.2d 961 (Fed. Cir. 1987) ..............................................................4

*National Corn Growers Ass'n v. Baker*,
840 F.2d 1547 (Fed. Cir. 1988) ............................................................6

*Norsk Hydro Canada, Inc. v. United States*,
472 F.3d 1347 (Fed. Cir. 2006) ............................................................6

*Sunpreme Inc. v. United States*,
892 F.3d 1186 (Fed. Cir. 2018) ......................................................9, 17

*Suntec Indus. Co., Ltd. v. United States*,
857 F.3d 1363 (Fed. Cir. 2017) ............................................................6

*Tokyo Kikai Seisakusho Ltd. v. United States*,
529 F.3d 1352 (Fed. Cir. 2008) ..........................................................23

*United States Steel Corp. v. United States*,
Case No. 14-cv-00232 (Ct. Int'l Trade) ..............................................15

*Wanxiang Am. Corp. v. United States*,
12 F.4th 1369 (Fed. Cir. 2021) ............................................................4

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)......................................................................10, 11

*Williams v. Sec'y of Navy,*
  787 F.2d 552 (Fed. Cir. 1986) ..............................................................6

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i).................................................................8

19 U.S.C. § 1677(35)(C)....................................................20, 21, 22, 23

19 U.S.C. § 1677(35)(C)(ii)...............................................................20

28 U.S.C. § 1581(i) ..................................................................4, 5, 9, 24

28 U.S.C. § 1581(c) ...........................................................................*passim*

## Other Authorities

*Uruguay Round Agreements Act: Statement of Administrative Action,*
  H.R. Doc. No. 103-316, vol. 1, 407, *reprinted in* 1994
  U.S.C.C.A.N. 4040 ...........................................................................21

**INTRODUCTION**

Ereğli Demir ve Çelik Fabrikalari T.A.S. ("Erdemir"), respectfully submits this reply brief addressing the arguments of Appellees the U.S. International Trade Commission (the "Commission"), and Cleveland-Cliffs, Inc., Steel Dynamics, Inc., SSAB Enterprises LLC, and Nucor Corporation (collectively, the "Domestic Interested Parties," or "DIPs") in their response briefs dated February 28, 2025. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. USITC et al.*, Case No. 24-2243, ECF No. 36 (Fed. Cir. Feb. 28, 2025) ("DIP Br."); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. USITC et al.*, Case No. 24-2243, ECF No. 37 (Fed. Cir. Feb. 28, 2025) ("Commission Br.").

The overarching issue in this case and companion cases *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2242 (Fed. Cir. 2024) and *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2249 (Fed. Cir. 2024), is the same — namely, can the Commission turn a blind-eye to facts that, if properly considered, would lead to a finding by the Commission that subject imports of hot-rolled steel ("subject merchandise") from Turkey never have caused, and otherwise will not lead to continuation or recurrence of, material injury? The Commission improperly refused to assess these facts through three separate actions filed by Erdemir.[1]

---

[1] The three separate actions represent Erdemir's efforts to find a mechanism for the Commission to consider the ongoing legal and factual validity of its original determination in light of subsequent litigation that without question undermines the

In this case, Erdemir availed itself of a request for reconsideration of the Commission's original injury determination in the antidumping ("AD") investigation of hot-rolled steel from Turkey to account for new facts that rendered the facts underlying that original determination erroneous. Specifically, the U.S. Department of Commerce ("Commerce") recalculated the dumping margin for Çolakoğlu Metalurji A.S. ("Çolakoğlu")—another Turkish exporter of hot-rolled steel—as a result of litigation by Çolakoğlu. After multiple decisions by the Court of International Trade ("CIT") remanding aspects of the margin calculation to Commerce, and multiple remand redeterminations issued by Commerce, Commerce calculated a *de minimis* dumping margin for Çolakoğlu. This resulted in a finding that exports from Çolakoğlu were not being dumped, and ultimately, Çolakoğlu's exclusion from the AD Order ("Turkey AD Order").

The Commission, however, had made its final injury determination based on its understanding that Çolakoğlu was engaged in dumping. Notably, the Commission determined that imports from Turkey were not negligible on the basis that Çolakoğlu was dumping, and therefore, its imports counted toward the total

---

legal and factual predicate for the imposition of the AD order in question. None of the efforts pursued by Erdemir are tethered to or would have required an appeal of the original investigation pursuant to any statute or regulation, nor does their success rely upon the success of any such appeal, despite Appellees' arguments to the contrary. Erdemir's efforts, including its claims in this appeal, must therefore be considered independent of any consideration as to whether Erdemir did or did not seek appeal of the Commission's original injury determination.

volume from Turkey under investigation by the Commission. This conclusion drove the Commission's negligibility determination as in fact, total imports from Turkey fell below the quantitative statutory threshold when Çolakoğlu's volumes are excluded. This conclusion was subsequently rendered erroneous post-issuance of the final injury determination, and Erdemir therefore sought to have the Commission reconsider its determination in light of the corrected facts.

Appellees now try to preclude Erdemir from exercising its legal right to have the Commission reconsider its injury determination to account for this crucial corrected factual and legal finding. The lower court erroneously held that Erdemir could have sought appeal of the Commission's original negligibility determination even though there was no basis to challenge the original determination at the time when the deadline for appeal of that determination expired. Indeed, the Commission's original negligibility determination was rendered erroneous in 2020, when Çolakoğlu succeeded in its litigation against Commerce's final AD determination and was excluded from the Turkey AD Order. Erdemir acted swiftly and timely following this decision.

In arguing that Erdemir could have appealed the Commission's original determination by the appeal deadline, Appellees ignore the fact that any such appeal would have been contingent on complex third-party litigation, and therefore, would have been too speculative to constitute a cognizable claim. The lower court's

decision prevents Erdemir from challenging the ongoing effect of the Commission's decision and shuts Erdemir out from legal recourse.

## ARGUMENT

## I. THE CIT HAD JURISDICTION UNDER SECTION 1581(i) OVER ERDEMIR'S ACTION

Appellees focus on whether Erdemir could have challenged the Commission's final injury determination by the November 2, 2016 appeal deadline. But Erdemir is not challenging the original determination. Rather, in this case, Erdemir challenges the Commission's refusal to commence reconsideration proceedings at Erdemir's request. Thus, the question of whether jurisdiction was available under 28 U.S.C. § 1581(c) to challenge the Commission's final injury determination is irrelevant. The CIT clearly had jurisdiction under 28 U.S.C. § 1581(i) to hear Erdemir's claim regarding the Commission's denial of Erdemir's reconsideration request, and it erred in holding that it did not.

Section 1581(i)—which provides for the CIT's "residual" jurisdiction—confers jurisdiction where: (1) jurisdiction under another subsection of § 1581 is not or was not available; <u>or</u> (2) the relief available under another subsection of § 1581 would be "manifestly inadequate." *Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1373 (Fed. Cir. 2021) (citing *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987)); *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012).

Appellees do not dispute that the CIT's jurisdiction over the Commission's rejection of reconsideration requests falls under § 1581(i). Rather, Appellees advance the faulty argument that the "true nature" of Erdemir's claim is a challenge to the Commission's final injury determination, and therefore, jurisdiction would have existed under 28 U.S.C. § 1581(c). Erdemir's action is plainly <u>not</u> a challenge to the Commission's injury determination, and as such, § 1581(c) would not confer jurisdiction to the CIT over Erdemir's action.

Even if § 1581(c) provided a jurisdictional basis for Erdemir's claim (it did not), the alleged available remedy would have been manifestly inadequate. Specifically, Erdemir did not have standing to challenge the Commission's determination within the appeals period.

## A. Jurisdiction Under 1581(c) Was Not Available for Erdemir's Action

Appellees argue that jurisdiction would have been available under § 1581(c) based on the notion that the "true nature" of Erdemir's claim is a challenge to the Commission's original injury determination. *See* Commission Br. at 25-28; *see also* DIP Br. at 24-27. This is plainly incorrect.

The CIT has jurisdiction under § 1581(c) over challenges to final AD and countervailing duty ("CVD") determinations by Commerce, as well as final injury determinations by the Commission. *See* 28 U.S.C. § 1581(c). If the "true nature" of a litigant's claim is a challenge to such a determination, then jurisdiction under

§ 1581(c) would lie. *See Suntec Indus. Co., Ltd. v. United States*, 857 F.3d 1363, 1367 (Fed. Cir. 2017) (quoting *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016) (internal citations omitted)).

The "true nature" of a claim "depend{s} upon the attendant facts asserted in the pleadings." *Hutchison Quality Furniture*, 827 F.3d at 1360 (citing *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)); *Williams v. Sec'y of Navy*, 787 F.2d 552, 557-58 (Fed. Cir. 1986) (explaining that "the substance of the pleadings define a suit."). When "determining the 'true nature' of an action," the Court must "discern the particular agency action that is the source of the alleged harm." *Hutchison Quality Furniture*, 827 F.3d at 1355 (citing *National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988)).

The "true nature" of Erdemir's action is **not** a challenge to the Commission's final injury determination. Rather, the "true nature" of Erdemir's claim is a challenge to the Commission's denial of its requests for reconsideration proceedings. Erdemir requested reconsideration of the Commission's final injury determination concerning AD imports of subject merchandise from Turkey in light of subsequent developments that altered the factual predicate on which that determination was based. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, Case No. 22-cv-00349, ECF No. 14, at ¶¶ 17-21, 37-38 (Ct. Int'l Trade Jan. 24, 2023) ("Amended Complaint") (Appx000703-000704, Appx000708). However, the Commission

refused to conduct a reconsideration proceeding, even though: (1) it clearly had the authority to do so, as explained below; and (2) the subsequent developments referenced above (specifically, the exclusion of Çolakoğlu from the Turkey AD Order) rendered the facts underlying the Commission's determination erroneous. In its Complaint, Erdemir only challenged this refusal by the Commission. Indeed, Erdemir's complaint explicitly states that it is challenging the Commission's denial of its reconsideration request. *See* Amended Complaint, at ¶ 1 (Appx000699).

Appellees do not dispute that § 1581(c) does not apply to a challenge of a decision by the Commission not to initiate a reconsideration proceeding. Moreover, Erdemir's challenge here is a distinct legal action that fundamentally differs from any challenge to an injury determination by the Commission. First, the specific question at issue in Erdemir's action—that is, whether the "Commission's rejection of Erdemir's requests for reconsideration was agency action unlawfully withheld; was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and otherwise not lawful under 5 U.S.C. § 706"—could not have been answered by a challenge to the Commission's injury determination. *See* Amended Complaint, at ¶ 38 (Appx000708). This question did not and could not have existed at the time of the Commission's final injury determination, because the Commission had yet to reject Erdemir's reconsideration request. Further, this question differs from any question that would arise in a challenge to the final injury determination (*e.g.*, the

question of whether the Commission's negligibility finding was supported by substantial evidence).

Second, on the merits, the CIT would review the Commission's decision denying Erdemir's requests for reconsideration under an "abuse of discretion" standard. *See Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1378 (Fed. Cir. 2011) (quoting *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987) ("It is well established that, when an administrative agency denies a party's petition which seeks to 'reopen {a case} on the basis of new evidence or changed circumstances,' that decision is reviewable on appeal, and 'abuse of discretion is the standard.'")). By contrast, the CIT would review the Commission's final injury determination under a "substantial evidence" standard. *See* 19 U.S.C. § 1516a(b)(1)(B)(i); *see also American Alliance for Hardwood Plywood v. United States*, 392 F. Supp. 3d 1298, 1304 (Ct. Int'l Trade 2019). As a result, Erdemir's arguments in its action challenging the Commission's denial of its reconsideration requests differ from those that it would ostensibly make in an action challenging the Commission's injury determination.

Taken as a whole, the "true nature" of Erdemir's claim is a challenge to the Commission's denial of its reconsideration requests, not a challenge to the Commission's final injury determination.

**B.     Even If Section 1581(c) Did Confer Jurisdiction Over Erdemir's Claim, the Available Remedy Would Have Been Manifestly Inadequate**

Further, the remedy available to Erdemir by bringing a claim under § 1581(c) would have been manifestly inadequate.  This again confirms that § 1581(i) is the appropriate jurisdictional basis for Erdemir's claim.

The remedy is "manifestly inadequate" when the claim would be "an exercise in futility, or 'incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193-94 (Fed. Cir. 2018) (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008) (internal citations omitted; emphasis omitted; internal quotation marks omitted)).  Here, any claim by Erdemir under § 1581(c) would have been "an exercise in futility" because Erdemir lacked standing to challenge the Commission's final injury determination by the November 2, 2016 appeal deadline.  Indeed, just as they have done here, Appellees would almost certainly have moved to dismiss Erdemir's action, either for lack of standing or for failure to state a claim on which relief could be granted.

Erdemir lacked standing to challenge the Commission's final injury determination—including its negligibility finding  for Turkey—within 30 days of the publication of the Turkey AD Order (*i.e.*, by November 2, 2016).[2]

---

[2] The Commission contends that Erdemir's argument concerning its lack of

To have standing in federal court, a party must demonstrate, *inter alia*, that it

has suffered "a concrete and particularized injury." *Hollingsworth v. Perry*, 570 U.S.

693, 700 (2013). This injury must be "actual or imminent, not 'conjectural' or

'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal

citations omitted). The Supreme Court has "repeatedly reiterated that 'threatened

injury must be *certainly impending* to constitute injury in fact,' and that

standing under § 1581(c) should be rejected as untimely, based on the theory that
Erdemir failed to exhaust administrative remedies with respect to this argument.
*See* Commission Br. at 34. This argument is baseless. First, Erdemir *did* raise the
issue of standing before the CIT. Indeed, the CIT referenced Erdemir's arguments
on this point in its decision. *See Ereğli Demir ve Çelik Fabrikalari T.A.S. v.
United States Int'l Trade Comm'n*, 723 F. Supp. 3d 1354, 1367 (Ct. Int'l Trade
2024) (Appx0022) ("According to plaintiff, any challenge to the Commission's
final determination would have been speculative, as it would have depended by
necessity on the success of plaintiff's then pending challenge to the final dumping
margin of Commerce. Plaintiff argues that, as a result, plaintiff would not have
had standing to challenge the Commission's determination.") (internal citations
omitted). Second, the authorities cited by the Commission for this contention
relate to the exhaustion of remedies "before the *pertinent administrative
agencies*"—not the courts. *Accord Boomerang Tube LLC v. United States*, 856
F.3d 908, 912 (Fed. Cir. 2017) (quoting *Corus Staal BV v. United States*, 502 F.3d
1370, 1381 (Fed. Cir. 2007) (emphasis added)). The exhaustion doctrine ensures
that all parties have "an opportunity to be heard" on matters related to the agency
record "at the administrative level." *See Budd Co., Wheel & Brake Div. v. United
States*, 773 F. Supp. 1549, 1555-1556 (Ct. Int'l Trade 1991). In other words, this
doctrine prevents parties from raising arguments about the facts that were before an
agency for the first time in a judicial context. The exhaustion doctrine does not
relate to purely legal arguments (*e.g.*, arguments related to Article III standing) that
parties might bring before the courts. *Cf. Hercules, Inc. v. United States*, 673 F.
Supp. 454, 476 (Ct. Int'l Trade 1987) (recognizing an exception to the exhaustion
doctrine for "purely legal" claims that are "outside of the administrative record"
and do "not add factual data to the record."). For this reason, the Commission's
attempt to apply the exhaustion doctrine to Erdemir's standing argument fails.

'{a}llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis added; internal quotation marks omitted)). Indeed, the Supreme Court has historically "been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 409 (discussing *Whitmore*, 495 U.S. 149 (litigant lacked standing where claim was largely contingent on the possibility that litigant would secure federal habeas relief, but then be retried and reconvicted)).

Erdemir lacked standing to challenge the Commission's final injury determination by the appeal deadline because it could not have demonstrated "certainly impending" injury at that time. *Accord Clapper*, 568 U.S. at 409. The injury that Erdemir might someday experience would stem from Commerce calculating a *de minimis* dumping margin for Çolakoğlu, thereby excluding Çolakoğlu from the Turkey AD Order and altering the facts underpinning the Commission's negligibility finding for AD imports from Turkey.

These events, however, hinged on specific outcomes in multi-phase, third-party litigation. As discussed below, within the appeals period, the outcome of this litigation remained years away and unknowable. Therefore, at the time, Erdemir could only have made a conjectural allegation that the actions of a third-party litigant (Çolakoğlu) and independent decisionmakers (the CIT and Commerce) might

ultimately render the facts underpinning the Commission's negligibility finding erroneous. This allegation of a hypothetical, future injury would have been too speculative to constitute injury-in-fact despite Appellees' attempts to color these claims otherwise.

In the original investigation, the Commission concluded that AD imports from Turkey were not negligible only because Çolakoğlu's imports qualified as subject imports. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final), USITC Pub. 4638, at 13 (Sept. 2016) (Appx0313). The exclusion of Çolakoğlu's imports would have conclusively led the Commission to find all subject imports from Turkey to be negligible, as was the result in the companion CVD determination. *See id.* at 13-14 ("Subsidized imports from Turkey (excluding exports produced by Çolakoğlu), however . . . fell below the three percent negligibility threshold for the present material injury analysis) (Appx0313-0314). The Commission's inclusion of both producers' imports in its negligibility analysis was dependent on Commerce's final AD determination for Turkey, in which Commerce originally calculated above-*de minimis* dumping margins for both Turkish producers (but then, of course, reversed that finding in subsequent litigation). *See Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair*

*Value*, 81 Fed. Reg. 53428, 53428-53429 (Dep't of Commerce Aug. 12, 2016) (Appx0287-0288).

After the issuance of the Turkey AD Order in October 2016, Çolakoğlu and Erdemir each appealed Commerce's final AD determination with respect to their own rates, and the CIT consolidated their cases. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, Case No. 24-2243, ECF No. 29, at 5 (Fed. Cir. Nov. 20, 2024) ("Erdemir Opening Brief"). Çolakoglu's appeal involved multiple, complex claims of unlawful action by Commerce. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 308 F. Supp. 3d 1297, 1304 (Ct. Int'l Trade 2018). These included claims related to "Commerce's determinations regarding duty drawback, indirect selling expenses, corrections to international ocean freight expenses, cost-averaging methodology, and treatment of excess heat as a co-product." *Id*.

Litigation over Çolakoğlu's claims spanned nearly four years and involved three CIT decisions remanding aspects of the dumping margin calculation for Çolakoğlu. After three court-ordered revisions, Commerce eventually calculated a *de minimis* margin for Çolakoğlu. And in 2020, the CIT fully sustained this remand redetermination. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020).

As illustrated above and detailed in Erdemir's Opening Brief, numerous events

had to occur for Çolakoğlu to receive a *de minimis* dumping margin and be excluded from the Turkey AD Order.

Appellees, however, want this Court to gloss over these important facts. *See* Commission Br. at 28-33; *see also* DIP Br. at 38-45. Appellees cite to inapplicable case law, reference inconsequential facts related to the timing of Çolakoğlu's appeal of Commerce's final AD determination, and improperly call upon an appeal by Erdemir of Commerce's final CVD determination, which Erdemir made under distinct circumstances. None of Appellees' attempted counterarguments undermine the speculative nature of Erdemir's claim.

<u>First</u>, Appellees argue that the remedy available to Erdemir under § 1581(c) would have been adequate because Erdemir could have sought a stay of its claim against the Commission's final injury determination pending the outcome of Çolakoglu's challenge to Commerce's final AD determination. *See* DIP Br. at 28; *see also* Commission Br. at 29-38. To support this proposition, Appellees cite to various decisions by the courts in which stays were granted. However, these decisions are not applicable to the circumstances before this Court.

Specifically, in these cases, the *same litigants* that appealed the Commission determination had brought an appeal of a Commerce determination that would be outcome-determinative to the appeal of the Commission action. For example, in the *Boomerang Tube* litigation cited by Appellees, the <u>same domestic producers</u>

had appealed Commerce's and the Commission's final determinations in the AD

proceedings concerning oil country tubular goods. *See Ereğli*, 723 F. Supp. 3d at

1368-69 (discussing *Boomerang Tube LLC v. United States*, Case No. 14-cv-00196

(Ct. Int'l Trade) and *United States Steel Corp. v. United States*, Case No. 14-cv-

00232 (Ct. Int'l Trade)) (Appx0025–0026). In the *ArcelorMittal* litigation cited by

Appellees, the <u>same domestic producers</u> challenged: (1) a negligibility

determination by the Commission; and (2) the *de minimis* dumping and subsidy

margins calculated by Commerce for certain producers, on which this negligibility

determination by the Commission relied. *See ArcelorMittal USA LLC v. United*

*States*, Consol. Case No. 16-cv-00214, ECF No. 52, at 4 (Ct. Int'l Trade Feb. 7,

2017); *see also DuPont Teijin Films v. United States*, 2015 WL 5024950, at *1-3

(Ct. Int'l Trade 2015) (same U.S. producers appealed a Commerce scope ruling and

the Commission's final negative determination in a sunset review, which relied on

the findings in Commerce's scope ruling). In sum, in each of the cases cited by

Appellees, the <u>same litigants</u> controlled the appeal of the Commission's

determination *and* the appeal(s) of Commerce's actions that could render the facts

underpinning the Commission's determination erroneous.

By contrast, Erdemir's appeal of the Commission's final injury determination

would have been wholly contingent on third-party litigation. Erdemir had no

control over Çolakoğlu's challenge to Commerce's final AD determination, which

was the appeal that could have rendered the facts on which the Commission made its negligibility determination for AD imports of subject merchandise from Turkey erroneous.

Appellees' reliance on *Encon Indus., Inc. v. United States* is also misplaced. *See* 18 CIT 867 (1994). In *Encon*, the CIT stated that the plaintiff could have raised a specific claim against the Commission's final injury determination in earlier litigation, despite third-party litigation of Commerce's final AD determination potentially affecting that claim. *Encon*, 18 CIT at 869 (internal citations omitted). This language from *Encon* is dicta. The CIT's holding in *Encon* does not rely at all on this language; rather, the CIT dismissed the plaintiff's action based on its failure to exhaust administrative remedies before Commerce. *See id.* at 868-869.

Second, the DIPs argue that Erdemir's claim would not have been speculative because it had notice of Çolakoğlu's appeal of Commerce's final AD determination five days before the deadline to appeal the Commission's final injury determination expired. *See* DIP Br. at 37-38. Erdemir's knowledge that Çolakoğlu had just appealed Commerce's final AD determination would not give Erdemir any greater control than it otherwise would have had (*i.e.*, none) over the progression and outcome of that appeal. The fact that Erdemir's claim would have hinged on a particular outcome in multi-phase, third-party litigation is what made that claim impermissibly speculative. Erdemir's claim would still have been based on only an

allegation of "possible future injury," which would have been insufficient to confer

standing under § 1581(c).  *Accord Clapper*, 568 U.S. at 409.  Because Erdemir

lacked standing to bring a claim against the Commission's final injury determination

under § 1581(c) within the appeal deadline, any attempt to seek relief through such

a claim would have been "an exercise in futility, or 'incapable of producing any

result.'"  *Accord Sunpreme*, 892 F.3d at 1193-94 (internal citations omitted; internal

quotation marks omitted).

    <u>Third</u>, the Commission argues that Erdemir's appeal of Commerce's final

CVD determination demonstrates that Erdemir could have appealed the

Commission's final injury determination and sought a stay pending the outcome of

Çolakoğlu's challenge to Commerce's final AD determination.  *See* Commission Br.

at 29-30.  Specifically, the Commission notes that Erdemir appealed Commerce's

final CVD determination for Turkey and Nucor Corporation ("Nucor") appealed the

Commission's negligibility determination for relevant CVD imports.  *See id*.  The

Commission assumes that Erdemir's appeal of Commerce's final CVD determination

for Turkey was a "protective measure in case Nucor succeeded in the Commission

litigation." *Id*. at 30.

    The Commission conveniently overlooks the circumstances of this appeal by

Erdemir.  In this appeal, Erdemir challenged actual methodological decisions by

Commerce that affected the calculation of Erdemir's final CVD rate.  *See Ereğli*

*Demir ve Çelik Fabrikaları T.A.Ş v. United States*, Case No. 16-cv-00217, ECF No. 7 (Ct. Int'l Trade Nov. 11, 2016) ("Erdemir CVD Complaint"), at ¶¶ 20-25 (Appx1907-1908). Specifically, Erdemir challenged Commerce's application of adverse facts available ("AFA") to certain aspects of Erdemir's purchase of mining company Divhan A.Ş. from the Government of Turkey ("GOT"), as well as Commerce's refusal to recognize the extinguishment of certain pre-2005 subsidies from GOT to Erdemir. *See* Erdemir CVD Complaint, at ¶¶ 20-25 (Appx1907-1908). These issues were concrete, and from Erdemir's perspective, erroneous at the time at which Erdemir filed its appeal.

Thus, when Erdemir appealed Commerce's final CVD determination for Turkey, it could identify and articulate the specific errors in Commerce's CVD calculation methodology underpinning its appeal. These errors existed, and were *identifiable as errors*, at the time of Erdemir's appeal. While these errors may not have had legal effect unless the Commission reversed its negligibility determination for CVD imports from Turkey, their erroneous nature did not turn on any findings in Nucor's litigation challenging the Commission's negative injury determination with respect to CVD imports from Turkey. In other words, certain aspects of Commerce's final CVD determination with respect to Erdemir were inherently erroneous, regardless of whether Nucor succeeded in its appeal.

The same was not true for the Commission's negligibility analysis for AD

imports from Turkey by the appeal deadline. Rather, the crucial facts underlying the challenge on negligibility came to light when Commerce issued its third remand redetermination excluding Çolakoğlu from the Turkey AD Order. As noted above, Çolakoğlu's exclusion from the Turkey AD Order was contingent upon a specific outcome in multi-phase, third-party litigation, which was not resolved until years after the deadline to appeal the Commission's final injury determination had passed. Therefore, Erdemir's appeal of Commerce's final CVD determination does not support the Commission's arguments.

## II. ERDEMIR STATED A CLAIM FOR WHICH RELIEF COULD BE GRANTED

The DIPs argue that Erdemir did not state a claim for which relief could have been granted because Commerce's remand redetermination removing Çolakoğlu from the Turkey AD Order did not render the Commission's negligibility determination for AD imports from Turkey erroneous. *See* DIP Br. at 47. This argument is plainly flawed.

First, Commerce's post-litigation amendments to Çolakoğlu's dumping margin caused the margin information relied upon by the Commission in its original determination to be erroneous. This fact is affirmed by the lower court's statement in previous litigation, in which it expressly acknowledged that "parties can and do challenge ITC's actions on the basis of errors in the information furnished to it by Commerce." *Encon*, 18 CIT at 869.

In the instant case, Commerce originally calculated an above-*de minimis* dumping margin for Çolakoğlu. Commerce supplied that margin to the Commission, and the Commission relied on it when determining the universe of subject merchandise from Turkey. However, in its third remand redetermination, Commerce determined that Çolakoğlu had not been dumping and excluded it from the Turkey AD Order. Per *Encon*, this redetermination meant that the Commission's negligibility analysis was founded on erroneous facts (*i.e.*, the original, above-*de minimis* dumping margin for Çolakoğlu).

Second, the DIPs' argument relies on a faulty reading of the statute. The DIPs reference 19 U.S.C. § 1677(35)(C)(ii), which states that "the magnitude of the margin of dumping used by the Commission" in a final injury determination "shall be . . . the dumping margin or margins most recently published by {Commerce} prior to the closing of the Commission's administrative record." 19 U.S.C. § 1677(35)(C)(ii). The DIPs also cite to the Statement of Administrative Action to the Uruguay Round Agreements Act ("URAA"), which they claim evidences Congress's intent for 19 U.S.C. § 1677(35)(C) to prohibit the Commission from reconsidering an injury determination based on any changes to the dumping margins after the Commission's record has closed. Specifically, the DIPs note the following explanation of 19 U.S.C. § 1677(35)(C) from the SAA:

> Changes in the original margin could occur due to further
> proceedings in staggered investigations, corrections of

> ministerial errors, reconsideration of a determination, or judicial remand. Absent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands. The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin.

*Uruguay Round Agreements Act: Statement of Administrative Action*, H.R. Doc. No. 103-316, vol. 1 at 851, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184 ("SAA").

The DIPs ignore the fact that 19 U.S.C. § 1677(35)(C) relates to the Commission's consideration of dumping margins in the context of its *impact* analysis, not its *negligibility* analysis. Indeed, the SAA's explanation of 19 U.S.C. § 1677(35)(C) is titled "Impact on Affected Domestic Industry; Consideration of Dumping Margin." SAA at 850, *reprinted in* 1994 U.S.C.C.A.N. at 4184. The SAA makes no reference to 19 U.S.C. § 1677(35)(C) in its discussion of negligibility. *See* SAA at 855-857, *reprinted in* 1994 U.S.C.C.A.N. at 4187-4189. The CIT has also indicated that 19 U.S.C. § 1677(35)(C) specifically pertains to the Commission's impact analysis. *See LG Electronics, Inc. v. United States Int'l Trade Comm'n*, 2014 WL 260603, at *2 (Ct. Int'l Trade 2014) (noting that "Congress . . . required that the {Commission} conduct its *impact* analysis based upon the most recent Commerce determination") (emphasis added).

In fact, the Commission itself seems to recognize that 19 U.S.C. § 1677(35)(C) specifically relates to its impact analysis. In its decision denying

Erdemir's request for consideration, the Commission explicitly stated that in 19 U.S.C. § 1677(35)(C), as informed by the SAA, "Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's *impact* analysis." *Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73331, 73332 (Int'l Trade Comm'n Nov. 29, 2022) ("Reconsideration Denial") (emphasis added) (Appx0037-38). Commissioners Kearns and Karpel still took issue with this sentence in the Commission's Reconsideration Denial for the very reason that 19 U.S.C. § 1677(35)(C) pertains to the Commission's impact analysis. Specifically, Commissioners Kearns and Karpel noted that:

> "…19 U.S.C. 1677(35)(C) defines the 'magnitude of margins of dumping' that the Commission is to consider in its impact analysis in accordance with 19 U.S.C. 1677(7)(C)(iii)(v), and . . . the section of the SAA referenced above pertains to these provisions. Erdemir, on the other hand, is not asking the Commission to reconsider the 'magnitude of margins of dumping' for purposes of its impact analysis pursuant to 19 U.S.C. 1677(7)(C)(iii)(v) and 1677(35)(C), but rather is asking for the Commission to reconsider its negligibility analysis for purposes of 19 U.S.C. 1673d(b)(1) and 19 U.S.C. 1677(24) because the scope of imports subject to Commerce's final affirmative

> antidumping duty determination has changed. Therefore .
> . . it is not clear that 19 U.S.C. 1677(7)(C)(iii)(v) and
> 1677(35)(C) and the related SAA language address the
> circumstances presented here."

Reconsideration Denial, at 73332-73333 fn. 1 (Appx0038).

It may be true that, pursuant to 19 U.S.C. § 1677(35)(C), the Commission would not have authority to initiate a reconsideration proceeding to revisit its *impact* analysis based on subsequent changes to the dumping margins. Assuming *arguendo* that this is true, it does not mean this limitation applies to all other potential considerations when conducting a reconsideration proceeding, including negligibility.

The Commission undoubtedly had discretion to reconsider its negligibility finding for AD imports from Turkey in light of Çolakoglu's exclusion from the Turkey AD Order. *See Tokyo Kikai Seisakusho Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008) ("The power to reconsider is inherent in the power to decide.") (internal citation omitted). In fact, the Commission may have had an obligation to do so, because the errors identified by Erdemir destabilized the entire basis for the Commission's affirmative injury determination for AD imports from Turkey. Therefore, in challenging the Commission's abuse of its discretion to reconsider its determination, Erdemir clearly stated a claim for which relief can be granted.

Finally, Appellees' arguments intrinsically incorporate a flawed position that Erdemir's reconsideration request would only be viable had Erdemir appealed the

original injury determination and failed to receive a stay by the court. This flawed position is depicted throughout their briefs, when Appellees continuously reiterate their belief that the relief Erdemir seeks here could have been obtained through an appeal of the original injury determination, while also acknowledging that the success of the appeal hinged on the courts granting a stay. In taking this position, however, Appellees seem to suggest that if Erdemir had appealed the original injury determination and not been granted a stay, it only then may have had a valid reconsideration claim. But the availability of reconsideration proceedings is not triggered by judicial appeal and Appellees do not cite to any such pre-conditions for reconsideration proceedings. Accepting Appellees' argument would therefore introduce new law establishing requirements for reconsideration proceedings that do not already exist, something the courts should be wary to do.

## CONCLUSION

For the foregoing reasons, this Court should reverse the CIT, find that the lower court had jurisdiction over Erdemir's claims under § 1581(i), and remand to the CIT for further proceedings.

Dated: April 4, 2025

Respectfully submitted,

*/s/ Christine M. Streatfeild*
Christine M. Streatfeild
Justin R. Becker
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff-Appellant,*
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 24-2243

**Short Case Caption:** Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  5,571  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/04/2025

Signature: /s/ Christine M. Streatfeild

Name: Christine M. Streatfeild